# BILL JOHNSON'S RESTAURANTS, INC. *v.* NATIONAL
# LABOR RELATIONS BOARD

No. 81–2257.   Argued March 29, 1983—Decided May 31, 1983

WHITE, J., delivered the opinion for a unanimous Court. BRENNAN, J., filed a concurring opinion, *post*, p. 750.

*Lawrence Allen Katz* argued the cause and filed briefs for petitioner.

*Carolyn F. Corwin* argued the cause for respondent. With her on the brief were *Solicitor General Lee, Deputy Solicitor General Wallace, Norton J. Come, Linda Sher,* and *Candace M. Carroll.**

JUSTICE WHITE delivered the opinion of the Court.

We must decide whether the National Labor Relations Board may issue a cease-and-desist order to halt the prosecution of a state-court civil suit brought by an employer to retaliate against employees for exercising federally protected labor rights, without also finding that the suit lacks a reasonable basis in fact or law.

I

The present controversy arises out of a labor dispute at "Bill Johnson's Big Apple East," one of four restaurants owned and operated by the petitioner in Phoenix, Ariz. It began on August 8, 1978, when petitioner fired Myrland Helton, one of the most senior waitresses at the restaurant. Believing that her termination was the result of her efforts to organize a union, she filed unfair labor practice charges against the restaurant with the Board.

On September 20, after an investigation, the Board's General Counsel issued a complaint. On the same day, Helton, joined by three co-waitresses and a few others, picketed the restaurant. The picketers carried signs asking customers to boycott the restaurant because its management was unfair to the waitresses. Petitioner's manager confronted the picketers and threatened to "get even" with them "if it's the last thing I do." Petitioner's president telephoned the husband

---

*J. Albert Woll, Laurence Gold, Michael H. Gottesman,* and *Jeremiah A. Collins* filed a brief for the American Federation of Labor and Congress of Industrial Organizations as *amicus curiae* urging affirmance.

*Edward B. Miller, Matthew R. McArthur,* and *Stephen A. Bokat* filed a brief for the Chamber of Commerce of the United States as *amicus curiae.*

of one of the picketing waitresses and impliedly threatened that the couple would "get hurt" and lose their new home if the wife continued to participate in the protest. The picketing continued on September 21 and 22. In addition, the picketers distributed a leaflet that accused management of making "[u]nwarranted sexual advances" and maintaining a "filthy restroom for women employees." The leaflet also stated that a complaint against the restaurant had been filed by the Board and that Helton had been fired after suggesting that a union be organized.

On the morning of September 25, petitioner and three of its co-owners filed a verified complaint against Helton and the other demonstrators in an Arizona state court. Plaintiffs alleged that the defendants had engaged in mass picketing, harassed customers, blocked public ingress to and egress from the restaurant, and created a threat to public safety. The complaint also contained a libel count, alleging that the leaflet contained false and outrageous statements published by the defendants with the malicious intent to injure the plaintiffs. The complaint sought a temporary restraining order and preliminary and permanent injunctive relief, as well as compensatory damages, $500,000 in punitive damages, and appropriate further legal and equitable relief. App. 3–9. After a hearing, the state court declined to enjoin the distribution of leaflets but otherwise issued the requested restraining order. *Id.*, at 19–23. Expedited depositions were also permitted. The defendants retained counsel and, after a hearing on the plaintiffs' motion for a preliminary injunction on November 16, the court dissolved the temporary restraining order and denied preliminary injunctive relief. *Id.*, at 52.

Meanwhile, on the day after the state-court suit was filed, Helton filed a second charge with the Board alleging that petitioner had committed a number of new unfair labor practices in connection with the dispute between the waitresses and the restaurant. Among these was a charge that petitioner had filed the civil suit in retaliation for the defendants' protected, concerted activities, and because they had filed

charges under the Act. The General Counsel issued a complaint based on these new charges on October 23. As relevant here, the complaint alleged that petitioner, by filing and prosecuting the state suit, was attempting to retaliate against Helton and the others, in violation of §§ 8(a)(1) and (4) of the National Labor Relations Act (NLRA or Act), 29 U. S. C. §§ 158(a)(1) and (4).[1]

In December 1978, an Administrative Law Judge (ALJ) held a 4-day consolidated hearing on the two unfair labor practice complaints.[2] On September 27, 1979, the ALJ rendered a decision concluding that petitioner had committed a total of seven unfair labor practices during the course of the

---

[1] These provisions state:

"It shall be an unfair labor practice for an employer—

"(1) to interfere with, restrain, or coerce employees in the exercise of rights guaranteed in section [7 of the Act];

.          .          .          .          .

"(4) to discharge or otherwise discriminate against an employee because he has filed charges or given testimony under this Act." 61 Stat. 140, 141, 29 U. S. C. §§ 158(a)(1) and (4).

Section 7 guarantees employees "the right to self-organization, to form, join, or assist labor organizations, . . . and to engage in other concerted activities for the purpose of collective bargaining or other mutual aid or protection." 61 Stat. 140, 29 U. S. C. § 157.

[2] On March 15, 1979, while the ALJ had the matter under submission, the state court issued an order granting the defendants' motion for summary judgment on the business interference claims but leaving the libel count for trial. Before the state court issued this ruling, the defendants had filed a counterclaim alleging abuse of process, malicious prosecution, wrongful injunction, libel, and slander. The parties then apparently cross-moved for summary judgment on both the claim and the counterclaim. The state court, in the same order of March 15, 1979, dismissed the abuse of process count in the counterclaim and left the libel counterclaim for trial. See App. to Brief for Petitioner D1.

Meanwhile, there had been other developments. On October 27, 1978, the Board's Regional Director petitioned the United States District Court pursuant to § 10(j) of the Act, 29 U. S. C. § 160(j), for an order enjoining petitioner from maintaining its state-court suit pending a final Board decision. On January 22, 1979, the District Court denied the request for an injunction. App. to Brief for Petitioner C1–C7.

labor dispute.   249 N. L. R. B. 155, 168–169 (1980).   With regard to the matter presently before us, the ALJ agreed with the General Counsel that the prosecution of the civil suit violated §§ 8(a)(1) and (4).   The ALJ applied the rationale of *Power Systems, Inc.*, 239 N. L. R. B. 445, 449–450 (1978), enf. denied, 601 F. 2d 936 (CA7 1979), in which the Board held that it is an unfair labor practice for an employer to institute a civil lawsuit for the purpose of penalizing or discouraging its employees from filing charges with the Board or seeking access to the Board's processes.

In *Power Systems*, the Board inferred that the employer had acted with retaliatory animus from the fact that the employer lacked "a reasonable basis upon which to assert" that its suit had merit.   Similarly, in the present case, the ALJ found that petitioner's suit lacked a reasonable basis and then concluded from this fact that the suit violated the Act because it was "an attempt to penalize Helton for having filed charges with the Board, and to penalize the other defendants for assisting Helton in her protest of the unfair labor practice committed against her."   249 N. L. R. B., at 165.   He bolstered his conclusion by noting the direct evidence that the suit had been filed for a retaliatory purpose, *i. e.*, the threats to "get even with" and "hurt" the defendants.   *Ibid.*

The ALJ reached his conclusion that petitioner's state suit lacked a reasonable basis "on the basis of the record and from [his] observation of the witnesses, including their demeanor, and upon the extensive briefs of the parties."   *Id.*, at 164. In the view of the ALJ, the "evidence fail[ed] to support" the complaint's allegations that the picketers clogged the sidewalks, harassed customers, or blocked entrances and exits to the restaurant.   *Id.*, at 165.   The libel count was deemed baseless because "the evidence establishe[d] the truthfulness" of everything stated in the leaflet.[3]

---

[3] The ALJ was apparently not made aware of the state court's denial of summary judgment as to the libel count.   This fact is most apparent by virtue of the ALJ's statement, 249 N. L. R. B., at 163, that the defendants' counterclaim for abuse of process was still pending before the state

On petitioner's appeal, the Board adopted, with minor exceptions, the ALJ's findings, conclusions of law, and recommended order. *Id.*, at 155. Accordingly, petitioner was ordered to undertake a number of remedial measures. Among other things, petitioner was required to withdraw its state-court complaint and to reimburse the defendants for all their legal expenses in connection with the suit. *Id.*, at 169–170.

The Court of Appeals enforced the Board's order in its entirety, 660 F. 2d 1335 (CA9 1981), holding that substantial evidence supported both the Board's findings that the employer's "lawsuit lacked a reasonable basis in fact, and that it was filed to penalize Helton [and] the picketers for engaging in protected activity." *Id.*, at 1342. Petitioner sought certiorari, urging that it could not properly be enjoined from maintaining its state-court action.[4] We granted the writ, 459 U. S. 942 (1982), and we now vacate and remand for further proceedings.

## II

The question whether the Board may issue a cease-and-desist order to halt an allegedly retaliatory lawsuit filed by an employer in a state court has had a checkered history before the Board.[5] At first, in *W. T. Carter & Bro.*, 90 N. L. R. B.

court. As noted in n. 2, *supra*, the state court dismissed the abuse of process counterclaim at the same time it denied summary judgment on the libel counts of both the claim and counterclaim.

[4] In its merits brief, petitioner for the first time argues to this Court that the Board erred by concluding that the taking of the state-court defendants' depositions constituted an unfair labor practice. Brief for Petitioner 33–36. This issue was not presented in the petition for certiorari and we decline to consider it. See this Court's Rule 34.1(a).

[5] It should be kept in mind that what is involved here is an employer's lawsuit that the federal law would not bar except for its allegedly retaliatory motivation. We are not dealing with a suit that is claimed to be beyond the jurisdiction of the state courts because of federal-law preemption, or a suit that has an objective that is illegal under federal law. Petitioner concedes that the Board may enjoin these latter types of suits. Brief for Petitioner 12–13, 20; Reply Brief for Petitioner 8. Nor could it be successfully argued otherwise, for we have upheld Board orders enjoining unions from prosecuting court suits for enforcement of fines that could

2020, 2023–2024 (1950), where an employer sued and obtained a state-court injunction barring its employees from holding union meetings on company property, a divided Board held that the prosecution of the suit constituted an unfair labor practice. The Board analogized from the common law of malicious prosecution and rejected the employer's contention that its "resort to court proceedings was a lawful exercise of a basic right." The dissent objected that the Board should recognize the employer's right to present its case to a judicial forum, *even if* its motive in doing so was to interfere with its employees' rights. *Id.*, at 2029 (Herzog, Chairman, dissenting). Ten years later, in *Clyde Taylor Co.*, 127 N. L. R. B. 103, 109 (1960), where the employer obtained an injunction banning peaceful union picketing in protest of unlawful discharges, the Board overruled *W. T. Carter* and adopted the view of the earlier dissent.

During the next 18 years after *Clyde Taylor*, the Board's decisions do not appear to us to have been entirely consist-

---

not lawfully be imposed under the Act, see *Granite State Joint Board, Textile Workers Union*, 187 N. L. R. B. 636, 637 (1970), enf. denied, 446 F. 2d 369 (CA1 1971), rev'd, 409 U. S. 213 (1972); *Booster Lodge No. 405, Machinists & Aerospace Workers*, 185 N. L. R. B. 380, 383 (1970), enf'd in relevant part, 148 U. S. App. D. C. 119, 459 F. 2d 1143 (1972), aff'd, 412 U. S. 84 (1973), and this Court has concluded that, at the Board's request, a District Court may enjoin enforcement of a state-court injunction "where [the Board's] federal power pre-empts the field." *NLRB* v. *Nash-Finch Co.*, 404 U. S. 138, 144 (1971).

*Nash-Finch* also requires rejection of petitioner's assertion that the Board is precluded from enjoining a state-court suit by virtue of 28 U. S. C. § 2283, which, subject to certain exceptions, prohibits a court of the United States from enjoining proceedings in a state court. In *Nash-Finch*, the Court held that § 2283 was inapplicable in instances where the Board files an action to restrain unfair labor practices, because the purpose of § 2283 "was to avoid unseemly conflict between the state and the federal courts where the litigants were private persons, not to hamstring the Federal Government and its agencies in the use of federal courts to protect federal rights." 404 U. S., at 146.

ent.[6]    Then, in *Power Systems*, 239 N. L. R. B., at 450, the Board concluded: "Since we have found that Respondent had no reasonable basis for its lawsuit, . . . the lawsuit had as its purpose the unlawful objective of penalizing [the employee] for filing a charge with the Board."    The suit therefore was enjoined as an unfair labor practice.    The gravamen of the offense was thus held to be the unlawful objective, which could be inferred by lack of a reasonable basis for the employer's suit.

Although the Board in *Power Systems* purported to distinguish *Clyde Taylor* and its progeny on the basis that the lawsuit in each of those cases "was not a tactic calculated to restrain employees in the exercise of their rights under the Act," 239 N. L. R. B., at 449, the distinction was illusory. In *Clyde Taylor* itself the Board found no unfair labor practice despite the ALJ's specific finding that the employer's lawsuit "was for the purpose of preventing his employees from exercising the rights guaranteed to them under the Act, rather than for the purpose of advancing any legitimate interest of his own."    127 N. L. R. B., at 121.    Since 1978, the Board has consistently adhered to the *Power Systems* rule that an employer or union who sues an employee for a retaliatory motive is guilty of a violation of the Act.[7]    Under this line of cases, as the Board's brief and its counsel's remarks at

---

[6] Compare, *e. g.*, *S. E. Nichols Marcy Corp.*, 229 N. L. R. B. 75 (1977); *Peddie Buildings*, 203 N. L. R. B. 265 (1973); and *United Aircraft Corp. (Pratt & Whitney Division)*, 192 N. L. R. B. 382 (1971), modified, 534 F. 2d 422 (CA2 1975), cert. denied, 429 U. S. 825 (1976); with, *e. g.*, *United Stanford Employees, Local 680*, 232 N. L. R. B. 326 (1977); *International Organization of Masters, Mates and Pilots*, 224 N. L. R. B. 1626 (1976), enf'd, 188 U. S. App. D. C. 15, 575 F. 2d 896 (1978); and *Television Wisconsin, Inc.*, 224 N. L. R. B. 722 (1976).

[7] See *Sheet Metal Workers' Union Local 355*, 254 N. L. R. B. 773, 778–780 (1981); *United Credit Bureau of America, Inc.*, 242 N. L. R. B. 921, 925–926 (1979), enf'd, 643 F. 2d 1017 (CA4), cert. denied, 454 U. S. 994 (1981); *George A. Angle*, 242 N. L. R. B. 744 (1979), enf'd, 683 F. 2d 1296 (CA10 1982).

oral argument in the present case confirm,[8] the Board does not regard lack of merit in the employer's suit as an independent element of the § 8(a)(1) and § 8(a)(4) unfair labor practice. Rather, it asserts that the *only* essential element of a violation is retaliatory motive.

## III

### A

At first blush, the Board's position seems to have substance. Sections 8(a)(1) and (4) of the Act are broad, remedial provisions that guarantee that employees will be able to enjoy their rights secured by § 7 of the Act—including the right to unionize, the right to engage in concerted activity for mutual aid and protection, and the right to utilize the Board's processes—without fear of restraint, coercion, discrimination, or interference from their employer. The Court has liberally construed these laws as prohibiting a wide variety of employer conduct that is intended to restrain, or that has the likely effect of restraining, employees in the exercise of protected activities.[9] A lawsuit no doubt may be used by an employer as a powerful instrument of coercion or retaliation. As the Board has observed, by suing an employee who files charges with the Board or engages in other protected activities, an employer can place its employees on notice that anyone who engages in such conduct is subjecting himself to the possibility of a burdensome lawsuit. Regardless of how unmeritorious the employer's suit is, the employee will most likely have to retain counsel and incur substantial legal ex-

[8] See Brief for Respondent 13, 18–21. At oral argument, despite close questioning by the Court, the Board's counsel declined to rule out the possibility that prosecution of a totally meritorious suit might be deemed by the Board to be an unfair labor practice, if filed for a retaliatory purpose. Tr. of Oral Arg. 29–35, 39–41, 46–47.

[9] See, *e. g., NLRB* v. *Scrivener,* 405 U. S. 117, 121–125 (1972); *NLRB* v. *Gissel Packing Co.,* 395 U. S. 575, 617–619 (1969); *NLRB* v. *Exchange Parts Co.,* 375 U. S. 405, 408–410 (1964); *Republic Aviation Corp.* v. *NLRB,* 324 U. S. 793, 797–798 (1945); *Phelps Dodge Corp.* v. *NLRB,* 313 U. S. 177, 182–187 (1941).

penses to defend against it. *Power Systems, supra,* at 449. Furthermore, as the Court of Appeals in the present case noted, the chilling effect of a state lawsuit upon an employee's willingness to engage in protected activity is multiplied where the complaint seeks damages in addition to injunctive relief. 660 F. 2d, at 1343, n. 3. Where, as here, such a suit is filed against hourly-wage waitresses or other individuals who lack the backing of a union, the need to allow the Board to intervene and provide a remedy is at its greatest.

There are weighty countervailing considerations, however, that militate against allowing the Board to condemn the filing of a suit as an unfair labor practice and to enjoin its prosecution. In *California Motor Transport Co.* v. *Trucking Unlimited,* 404 U. S. 508, 510 (1972), we recognized that the right of access to the courts is an aspect of the First Amendment right to petition the Government for redress of grievances. Accordingly, we construed the antitrust laws as not prohibiting the filing of a lawsuit, regardless of the plaintiff's anticompetitive intent or purpose in doing so, unless the suit was a "mere sham" filed for harassment purposes. *Id.,* at 511. We should be sensitive to these First Amendment values in construing the NLRA in the present context. As the Board itself has recognized: "[G]oing to a judicial body for redress of alleged wrongs . . . stands apart from other forms of action directed at the alleged wrongdoer. The right of access to a court is too important to be called an unfair labor practice solely on the ground that what is sought in the court is to enjoin employees from exercising a protected right." *Peddie Buildings,* 203 N. L. R. B. 265, 272 (1973), enf. denied on other grounds, 498 F. 2d 43 (CA3 1974). See also *Clyde Taylor Co.,* 127 N. L. R. B., at 109.

Moreover, in recognition of the States' compelling interest in the maintenance of domestic peace, the Court has construed the Act as not pre-empting the States from providing a civil remedy for conduct touching interests "deeply rooted in local feeling and responsibility." *San Diego Building Trades Council* v. *Garmon,* 359 U. S. 236, 244 (1959). It

has therefore repeatedly been held that an employer has the right to seek local judicial protection from tortious conduct during a labor dispute. See, *e. g., Sears, Roebuck & Co.* v. *Carpenters,* 436 U. S. 180 (1978); *Farmer* v. *Carpenters,* 430 U. S. 290 (1977); *Linn* v. *Plant Guard Workers,* 383 U. S. 53 (1966); *Construction Workers* v. *Laburnum Construction Corp.,* 347 U. S. 656 (1954).

In *Linn* v. *Plant Guard Workers, supra,* at 65, we held that an employer can properly recover damages in a tort action arising out of a labor dispute if it can prove malice and actual injury. See also *Farmer* v. *Carpenters, supra,* at 306. If the Board is allowed to enjoin the prosecution of a well-grounded state lawsuit, it necessarily follows that any state plaintiff subject to such an injunction will be totally deprived of a remedy for an actual injury, since the "Board can award no damages, impose no penalty, or give any other relief" to the plaintiff. *Linn, supra,* at 63. Thus, to the extent the Board asserts the right to declare the filing of a meritorious suit to be a violation of the Act, it runs headlong into the basic rationale of *Linn, Farmer,* and other cases in which we declined to infer a congressional intent to ignore the substantial state interest "in protecting the health and well-being of its citizens." *Farmer, supra,* at 302–303. See also *Sears, Roebuck & Co.* v. *Carpenters, supra,* at 196; *Linn, supra,* at 61.

Of course, in light of the Board's special competence in applying the general provisions of the Act to the complexities of industrial life, its interpretations of the Act are entitled to deference, even where, as here, its position has not been entirely consistent. *NLRB* v. *J. Weingarten, Inc.,* 420 U. S. 251, 264–267 (1975); *NLRB* v. *Seven-Up Co.,* 344 U. S. 344, 347–349 (1953). And here, were only the literal language of §§ 8(a)(1) and 8(a)(4) to be considered, we would be inclined to uphold the Board, because its present construction of the statute is not irrational. Considering the First Amendment right of access to the courts and the state interests identified in cases such as *Linn* and *Farmer,* however, we conclude

that the Board's interpretation of the Act is untenable. The filing and prosecution of a well-founded lawsuit may not be enjoined as an unfair labor practice, even if it would not have been commenced but for the plaintiff's desire to retaliate against the defendant for exercising rights protected by the Act.

## B

Although it is not unlawful under the Act to prosecute a meritorious action, the same is not true of suits based on insubstantial claims—suits that lack, to use the term coined by the Board, a "reasonable basis." Such suits are not within the scope of First Amendment protection:

> "The first amendment interests involved in private litigation—compensation for violated rights and interests, the psychological benefits of vindication, public airing of disputed facts—are not advanced when the litigation is based on intentional falsehoods or on knowingly frivolous claims. Furthermore, since sham litigation by definition does not involve a bona fide grievance, it does not come within the first amendment right to petition." [10]

Just as false statements are not immunized by the First Amendment right to freedom of speech, see *Herbert* v. *Lando*, 441 U. S. 153, 171 (1979); *Gertz* v. *Robert Welch, Inc.*, 418 U. S. 323, 340 (1974), baseless litigation is not immunized by the First Amendment right to petition.

Similarly, the state interests recognized in the *Farmer* line of cases do not enter into play when the state-court suit has no basis. Since, by definition, the plaintiff in a baseless suit has not suffered a legally protected injury, the State's interest "in protecting the health and well-being of its citizens," *Farmer, supra,* at 303, is not implicated. States have only a

---

[10] Balmer, Sham Litigation and the Antitrust Laws, 29 Buffalo L. Rev. 39, 60 (1980). Accord, *Clipper Exxpress* v. *Rocky Mountain Motor Tariff Bureau, Inc.*, 674 F. 2d 1252, 1265–1266 (CA9 1982); Fischel, Antitrust Liability for Attempts to Influence Government Action: The Basis and Limits of the Noerr-Pennington Doctrine, 45 U. Chi. L. Rev. 80, 101 (1977).

negligible interest, if any, in having insubstantial claims adjudicated by their courts, particularly in the face of the strong federal interest in vindicating the rights protected by the national labor laws.

Considerations analogous to these led us in the antitrust context to adopt the "mere sham" exception in *California Motor Transport Co.* v. *Trucking Unlimited,* 404 U. S. 508 (1972). We should follow a similar course under the NLRA. The right to litigate is an important one, and the Board should consider the evidence with utmost care before ordering the cessation of a state-court lawsuit. In a proper case, however, we believe that Congress intended to allow the Board to provide this remedy. Therefore, we hold that it is an enjoinable unfair labor practice to prosecute a baseless lawsuit with the intent of retaliating against an employee for the exercise of rights protected by § 7 of the NLRA.

## IV

Having concluded that the prosecution of an improperly motivated suit lacking a reasonable basis constitutes a violation of the Act that may be enjoined by the Board, we now inquire into what steps the Board may take in evaluating whether a state-court suit lacks the requisite basis. Petitioner insists that the Board's prejudgment inquiry must not go beyond the four corners of the complaint. Its position is that as long as the complaint seeks lawful relief that the state court has jurisdiction to grant, the Board must allow the state litigation to proceed. The Board, on the other hand, apparently perceives no limitations on the scope of its prejudgment determination as to whether a lawsuit has a reasonable basis. In the present case, for example, the ALJ conducted a virtual trial on the merits of petitioner's state-court claims. Based on this *de facto* trial, the ALJ concluded, in his independent judgment, based in part on "his observation of the witnesses, including their demeanor," that petitioner's suit lacked a reasonable basis.

We cannot agree with either party. Although the Board's reasonable-basis inquiry need not be limited to the bare

pleadings, if there is a genuine issue of material fact that turns on the credibility of witnesses or on the proper inferences to be drawn from undisputed facts, it cannot, in our view, be concluded that the suit should be enjoined. When a suit presents genuine factual issues, the state plaintiff's First Amendment interest in petitioning the state court for redress of his grievance, his interest in having the factual dispute resolved by a jury, and the State's interest in protecting the health and welfare of its citizens, lead us to construe the Act as not permitting the Board to usurp the traditional fact-finding function of the state-court jury or judge.[11] Hence, we conclude that if a state plaintiff is able to present the

---

[11] In civil practice, the "genuine issue" test is used for adjudging motions for summary judgment. See Fed. Rule Civ. Proc. 56. Substantively, it is very close to the "reasonable jury" rule applied on motions for directed verdict. See *Brady* v. *Southern R. Co.*, 320 U. S. 476, 479–480 (1943) (directed verdict should be granted when the evidence is such "that without weighing the credibility of the witnesses there can be but one reasonable conclusion as to the verdict"). In the civil context, most courts treat the two standards identically, although some have found slight differences. See generally C. Wright, A. Miller, & M. Kane, Federal Practice and Procedure §§ 2532, 2713.1 (1983); J. Moore & J. Lucas, Moore's Federal Practice ¶¶ 50.03[4], 56.04[2] (1982). The primary difference between the two motions is procedural; summary judgment motions are usually made before trial and decided on documentary evidence, while directed verdict motions are made at trial and decided on the evidence that has been admitted. *Ibid.*

In making reasonable-basis determinations, the Board may draw guidance from the summary judgment and directed verdict jurisprudence, although it is not bound by either. While genuine disputes about material historical facts should be left for the state court, plainly unsupportable inferences from the undisputed facts and patently erroneous submissions with respect to mixed questions of fact and law may be rejected.

Although we leave the particular procedures for making reasonable-basis determinations entirely to the Board's discretion, we see no reason why the Board should want to hear all the employer's evidence in support of his state suit, or any more than necessary, if it can be determined at an early stage that the case involves genuine issues of material fact or law. In appropriate cases, the Board might prefer to rely on documentary evidence alone, as is done in civil practice with summary judgment motions. On the other hand, the Board might prefer to conduct a hearing.

Board with evidence that shows his lawsuit raises genuine is-
sues of material fact, the Board should proceed no further
with the § 8(a)(1)–§ 8(a)(4) unfair labor practice proceedings
but should stay those proceedings until the state-court suit
has been concluded.[12]

In the present case, the only disputed issues in the state
lawsuit appear to be factual in nature. There will be cases,
however, in which the state plaintiff's case turns on issues of
state law or upon a mixed question of fact and law. Just as
the Board must refrain from deciding genuinely disputed ma-
terial factual issues with respect to a state suit, it likewise
must not deprive a litigant of his right to have genuine state-
law legal questions decided by the state judiciary.[13] While

---

[12] Let us assume, for example, that picketing employees distribute a leaf-
let accusing manager Doe of making a sexual advance on employee Roe on
a specific date. Claiming that the leaflet is maliciously false, Doe sues for
libel in state court. The Board's General Counsel then files a complaint
alleging that the state suit is retaliatory and lacks a reasonable basis. At a
hearing before an ALJ, Roe testifies that the accusation in the leaflet is
true. If Doe fails to testify or to come forward with any evidence that the
leaflet is maliciously false, or at least with an acceptable explanation why
he cannot present such evidence, cf. Fed. Rule Civ. Proc. 56(f) (summary
judgment may be denied if opponent needs time to discover essential
facts), we see no reason why the Board should not enjoin Doe's suit for lack
of a reasonable basis. In this situation, the state plaintiff has failed to
show that there are any genuine issues for the state court to decide, and
the inference that the suit is groundless·is too strong to ignore, in light
of the strong federal policy against deterring the exercise of employees'
collective rights.

In contrast, suppose that Doe testifies and claims that he was elsewhere
on the date of the alleged sexual incident. The question whether the libel
suit has merit thus turns in substantial part on the truth or falsity of Doe's
testimony. Under these circumstances, we doubt that Congress intended
for the Board to resolve the credibility issue and perhaps to disbelieve
Doe's story and enjoin the lawsuit for lack of a reasonable basis, thereby
effectively depriving Doe of his right to have this factual dispute resolved
by a state-court jury. The same would be true if the question turned on
the proper factual inferences to be drawn from undisputed facts.

[13] The present case involves a libel claim, which, of course, is not gov-
erned entirely by state law, since federal law superimposes a malice re-
quirement. *Linn* v. *Plant Guard Workers*, 383 U. S. 53, 64–65 (1966).

the Board need not stay its hand if the plaintiff's position is plainly foreclosed as a matter of law or is otherwise frivolous, the Board should allow such issues to be decided by the state tribunals if there is any realistic chance that the plaintiff's legal theory might be adopted.

In instances where the Board must allow the lawsuit to proceed, if the employer's case in the state court ultimately proves meritorious and he has judgment against the employees, the employer should also prevail before the Board, for the filing of a meritorious lawsuit, even for a retaliatory motive, is not an unfair labor practice. If judgment goes against the employer in the state court, however, or if his suit is withdrawn or is otherwise shown to be without merit, the employer has had its day in court, the interest of the State in providing a forum for its citizens has been vindicated, and the Board may then proceed to adjudicate the § 8(a)(1) and § 8(a)(4) unfair labor practice case. The employer's suit having proved unmeritorious, the Board would be warranted in taking that fact into account in determining whether the suit had been filed in retaliation for the exercise of the employees' § 7 rights. If a violation is found, the Board may order the employer to reimburse the employees whom he had wrongfully sued for their attorney's fees and other expenses. It may also order any other proper relief that would effectuate the policies of the Act. 29 U. S. C. § 160(c).[14]

## V

The Board argues that, since petitioner has not sought review of the factual findings below that the state suit in the present case lacked a reasonable basis and was filed for a

---

[14] The Board's power to take such action is not limited by the availability to injured employees of a state-court malicious prosecution or other action. Dual remedies are appropriate because a State has a substantial interest in deterring the filing of baseless litigation in its courts, and the Federal Government has an equally strong interest in enforcing the federal labor laws. The Federal Government need not rely on state remedies to ensure that its interests are served.

retaliatory motive, the judgment should be affirmed once it is concluded that the Board may enjoin a suit under these circumstances. Petitioner does, however, challenge the right of the Board to issue a cease-and-desist order in the circumstances present here, and the Board did not reach its reasonable-basis determination in accordance with this opinion. As noted above, the ALJ had no reservations about weighing the evidence and making credibility judgments. Based on his own evaluation of the evidence, he concluded that the libel count in petitioner's suit lacked merit, because the statements in the leaflet were true, and that the business interference counts were groundless, because the evidence failed to support petitioner's factual allegations. 249 N. L. R. B., at 164–165. See *supra*, at 736. It was not the ALJ's province to make such factual determinations. What he should have determined is not whether the statements in the leaflet were true, but rather whether there was a genuine issue as to whether they were knowingly false. Similarly, he should not have decided the facts regarding the business interference counts; rather, he should have limited his inquiry to the question whether petitioner's evidence raised factual issues that were genuine and material. Furthermore, because, in enforcing the Board's order, the Court of Appeals ultimately relied on the fact that "substantial evidence" supported the Board's finding that the prosecution of the lawsuit violated the Act, 660 F. 2d, at 1343, the Board's error has not been cured. Accordingly, without expressing a view as to whether petitioner's suit is in fact enjoinable, we shall return this case to the Board for further consideration in light of the proper standards.

## VI

To summarize, we hold that the Board may not halt the prosecution of a state-court lawsuit, regardless of the plaintiff's motive, unless the suit lacks a reasonable basis in fact or law. Retaliatory motive and lack of reasonable basis are both essential prerequisites to the issuance of a cease-and-

desist order against a state suit. The Board's reasonable-basis inquiry must be structured in a manner that will preserve the state plaintiff's right to have a state-court jury or judge resolve genuine material factual or state-law legal disputes pertaining to the lawsuit. Therefore, if the Board is called upon to determine whether a suit is unlawful prior to the time that the state court renders final judgment, and if the state plaintiff can show that such genuine material factual or legal issues exist, the Board must await the results of the state-court adjudication with respect to the merits of the state suit. If the state proceedings result in a judgment adverse to the plaintiff, the Board may then consider the matter further and, if it is found that the lawsuit was filed with retaliatory intent, the Board may find a violation and order appropriate relief. In short, then, although it is an unfair labor practice to prosecute an unmeritorious lawsuit for a retaliatory purpose, the offense is not enjoinable unless the suit lacks a reasonable basis.

In view of the foregoing, the judgment of the Court of Appeals is vacated, and the case is remanded to that court with instructions to remand the case to the Board for further proceedings consistent with this opinion.[15]

*So ordered.*

---

[15] On remand, the state court's denial of summary judgment on the libel count should be given careful consideration before a cease-and-desist order is issued, unless petitioner is deemed to have waived this point by failing to bring the state court's ruling to the attention of the ALJ prior to his decision. See nn. 2 and 3, *supra.* In the ordinary case, although the Board is not bound in a res judicata sense by such a state-court ruling, we see no reason why the state court's own judgment on the question whether the lawsuit presents triable factual issues should not be entitled to deference. In any event, such a state-court decision should not be disregarded without a cogent explanation for doing so.

Petitioner also argues that weight should be given to the fact that a Federal District Court denied the Board's petition for temporary injunctive relief. See *ibid.* At least in the context of the present case, we disagree, because here the District Court denied relief not because it felt that petitioner's lawsuit raised triable issues, but because it was of the erroneous

JUSTICE BRENNAN, concurring.

The Court holds today that the National Labor Relations Board may not enjoin the prosecution of a state-court lawsuit unless the suit lacks a "reasonable basis," *ante*, at 743, and, further, that to find that the suit lacks a reasonable basis on factual grounds the Board must find that there is no "genuine issue of material fact," *ante*, at 744–748. For me, those are no delphic pronouncements. They are standards that take their content from the basic structures of federal and state—and of administrative and judicial—authority over labor disputes, and they should not be read in an artificial way that ignores their provenance.

It is important to remember that our focus in this case is on the function of judicial review. On the one hand, the National Labor Relations Act constitutes the Board, and not this Court, the principal arbiter of federal labor policy.

> "Here, as in other cases, we must recognize the Board's special function of applying the general provisions of the Act to the complexities of industrial life. *Republic Aviation Corp.* v. *Labor Board,* 324 U. S. 793, 798; *Phelps Dodge Corp.* v. *Labor Board,* [313 U. S. 177,] 194, and of '[appraising] carefully the interests of both sides of any labor-management controversy in the diverse circumstances of particular cases' from its special understanding of 'the actualities of industrial relations.' *Labor Board* v. *United Steelworkers,* [357 U. S. 357,] 362–363. 'The ultimate problem is the balancing of the conflicting

---

view that a state suit could never be enjoined unless it sought "an unlawful objective, as, for example, when a union sues to enforce an unlawful contract." App. to Brief for Petitioner C5.

It appears that only the libel count remains pending before the state court. If petitioner's other claims have been finally adjudicated to be lacking in merit, on remand the Board may reinstate its finding that petitioner acted unlawfully by prosecuting these unmeritorious claims if the Board adheres to its previous finding that the suit was filed for a retaliatory purpose.

legitimate interests. The function of striking that balance to effectuate national labor policy is often a difficult and delicate responsibility, which the Congress committed primarily to the National Labor Relations Board, subject to limited judicial review.' *Labor Board* v. *Truck Drivers Union*, 353 U. S. 87, 96." *NLRB* v. *Erie Resistor Corp.*, 373 U. S. 221, 236 (1963).[1]

Thus, in reviewing the Board's construction of the Act and the remedy it has provided to effectuate the purposes of the Act, our task

"[is] not to interpret that statute as [we think] best but rather the narrower inquiry into whether the [NLRB]'s construction was 'sufficiently reasonable' to be accepted by a reviewing court. *Train* v. *Natural Resources Defense Council*, 421 U. S. 60, 75 (1975); *Zenith Radio Corp.* v. *United States*, 437 U. S. 443, 450 (1978). To satisfy this standard it is not necessary for a court to find the agency's construction was the only reasonable one or even the reading the court would have reached if the question initially had arisen in a judicial proceeding." *FEC* v. *Democratic Senatorial Campaign Committee*, 454 U. S. 27, 39 (1981).

On the other hand, this Court's responsibility for interpretation of the labor laws comes particularly into play when the Board's exercise of its broad mandate to develop federal labor policy has constitutional resonances. I do not suggest that a constitutional issue surfaces directly in this case. But

---

[1] As was said of the Federal Election Commission in *FEC* v. *Democratic Senatorial Campaign Committee*, 454 U. S. 27, 37 (1981), the NLRB is also "precisely the type of agency to which deference should presumptively be afforded." It is "vested . . . with 'primary and substantial responsibility for administering and enforcing the Act,'" and it is provided with " 'extensive rulemaking and adjudicative powers.'" *Ibid.* "It is authorized to 'formulate general policy with respect to the administration of this Act.'" *Ibid.* See also *NLRB* v. *J. Weingarten, Inc.*, 420 U. S. 251, 266–267 (1975).

we have often observed that Congress left much unsaid as to the effect of federal labor law on the delicate relationships between institutional policy and individual rights, and between State and Federal Governments, without intending to exercise the full measure of its constitutional power to regulate those relationships. See, *e. g.*, *Garner* v. *Teamsters*, 346 U. S. 485, 488 (1953). In construing how far the Act goes in depriving workers and employers of rights they would otherwise have under state law, we have often sought guidance from basic constitutional norms, on the theory that in the absence of more specific evidence they supply the surest indication of what Congress intended.

It is in this spirit that the "reasonable basis" and "genuine material dispute" standards must be understood. They are phrases that encapsulate a complex judgment as to what limits a court may infer on the Board's broad authority to set federal labor policy and to vindicate that policy by enjoining prosecution of a state lawsuit.[2] More specific meaning can be derived from close attention to the particular constitutional considerations upon which they are based.

We have recognized a right under the First Amendment to seek redress of grievances in state courts. *California Motor Transport Co.* v. *Trucking Unlimited,* 404 U. S. 508, 510 (1972). Congress can and does pre-empt some state causes of action by providing for exclusive federal jurisdiction over certain types of disputes, see, *e. g.*, 28 U. S. C. § 1338(a); 40 U. S. C. § 270b(b), but such complete pre-emption is not lightly implied. We have also held that Congress has *not* completely pre-empted the right to sue in state court for defamation that occurs in connection with a labor dispute. *Linn* v. *Plant Guard Workers,* 383 U. S. 53 (1966). Accord-

---

[2] Justice Frankfurter, writing for the Court, astutely observed that interpreting the National Labor Relations Act involves "a more complicated and perceptive process than is conveyed by the delusive phrase, 'ascertaining the intent of the legislature.'" *San Diego Building Trades Council* v. *Garmon,* 359 U. S. 236, 239–240 (1959).

ingly, it is appropriate to infer in a case implicating First Amendment rights, as here, that Congress did not intend to authorize the NLRB to enjoin the prosecution of an unpreempted state-court lawsuit, even if the plaintiff's subjective intent is to frustrate the operation of federal labor law, except where the plaintiff's First Amendment interests are at their weakest—where the suit is without a reasonable basis in fact or law. However, as the Court makes clear, *ante*, at 741, 749, the Board's ability to *enjoin* prosecution of a state suit is not the measure of its ability to determine that such prosecution constitutes an unfair labor practice or of its ability to provide other remedies to vindicate federal labor policy. Cf. *New York Times Co.* v. *United States*, 403 U. S. 713, 733 (1971) (WHITE, J., concurring) ("failure by the Government to justify prior restraints does not measure its constitutional entitlement to a conviction for criminal publication"). As to the necessity and the scope of these remedies, the Board is entitled to a high degree of deference.[3]

Somewhat different concerns affect the standards and procedures by which the Board makes its "reasonable basis" determination. While the Constitution protects a person's right to file and to prosecute a lawsuit in state court, it does not guarantee that state law, rather than federal law, will provide the ground for decision. In fact, with regard to labor disputes, federal pre-emption of state law is the rule, not the exception. That pre-emption may be accomplished by congressionally authorized administrative action as well as by legislation. *Fidelity Federal Savings & Loan Assn.* v. *De la Cuesta*, 458 U. S. 141, 153 (1982). Even in areas where state law is not pre-empted, there may be a federal overlay— as with defamation actions like the one involved in this case,

---

[3] Reasonable people could differ over the wisdom of deciding that a nonfrivolous suit which is withdrawn, or in which the plaintiff ultimately does not prevail, constitutes an unfair labor practice, see *ante*, at 749, but that is a question of labor policy for the Board to decide in the first instance.

which are limited by a federal requirement that malice be proved. See *Linn, supra,* at 61.

Nor does the Constitution guarantee that particular questions of fact will be decided by a state jury. To the extent that a litigant has an "interest in having the factual dispute resolved by a jury," *ante,* at 745, that interest is completely derivative from the State's interest in providing a particular cause of action with particular procedures. Yet that "State's right" may be pre-empted by federal law whenever Congress or its authorized agent determines that the federal interest in labor relations, in industries affecting commerce, requires different rules.

> "[W]hen it set down a federal labor policy Congress plainly meant to do more than simply to alter the then-prevailing substantive law. It sought as well to restructure fundamentally the processes for effectuating that policy, deliberately placing the responsibility for applying and developing this comprehensive legal system in the hands of an expert administrative body rather than the federalized judicial system." *Motor Coach Employees* v. *Lockridge,* 403 U. S. 274, 288 (1971).

See also *San Diego Building Trades Council* v. *Garmon,* 359 U. S. 236, 242–243 (1959); *Garner* v. *Teamsters, supra,* at 490–491.

That is not to say that Congress has authorized the Board to disregard altogether state-created rights to jury determinations on factual issues and to state-court rulings on state law that has not been pre-empted. *Linn* and its progeny make clear that it has not. The NLRA requires some accommodation of state interests; the question is how much. The most reasonable inference to draw from the structure of state-federal relations in this area is that the Board may enjoin prosecution of a state lawsuit if, in addition to whatever other findings are required to decide that an unfair labor practice has been committed, it determines that controlling

federal law bars the plaintiff's right to relief, that clear state law makes the case frivolous, or that no reasonable jury could make the findings of fact in favor of the plaintiff that are necessary under applicable law. I can understand the phrase "genuine material disputes," *ante,* at 749, no other way. With regard to questions of fact, which are crucial in this case, see *ante,* at 746, *Jackson* v. *Virginia,* 443 U. S. 307 (1979), provides an analogy for the proper allocation of fact-finding authority to those charged with protecting federal rights. A state lawsuit may be regarded as having no reasonable basis if no reasonable factfinder could give a verdict for the plaintiff. Even if a State has some interest in entertaining frivolous lawsuits or providing unreasonable juries, that interest need not prevent swift, effective vindication of federal labor policy.

The scope of our review of the *procedures* the Board uses to accomplish its mission is limited, and the constitutional constraints on them are attenuated. Unless the agency goes entirely beyond its statutory mandate, violates its own procedures, or fails to provide an affected party due process of law, we have no role in specifying what methods it may or may not use in finding facts or reaching conclusions of law and policy. See *Vermont Yankee Nuclear Power Corp.* v. *Natural Resources Defense Council, Inc.,* 435 U. S. 519, 548–549 (1978). The Court acknowledges this and notes that "we leave the particular procedures for making reasonable-basis determinations entirely to the Board's discretion." *Ante,* at 745, n. 11. Specifically, the Board may take evidence, although it need not do so in every case, nor would it be wise to do so in every case. *Ibid.*

Thus, the Board retains broad power to deal with the ways in which resort to judicial process may be used as a "powerful instrument of coercion or retaliation," *ante,* at 740. There is no constitutionally privileged method of harassing or punishing those who exercise rights protected by §§ 7 and 8 of the NLRA. The Board may not enjoin prosecution of an unpre-

empted state lawsuit unless it finds that the suit has no reasonable basis, and it may not decide that a suit has no reasonable basis in fact if a reasonable jury could view the facts differently. But it may take other measures which have less direct impact on the plaintiff's First Amendment rights, and it may investigate the matter to the full extent it deems necessary to vindicate the federal interest in protecting participants in labor disputes from coercive state-court lawsuits.