
IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| In the Matter of | ) | |
| | ) | No. 37799-7-III |
| T.B. and K.B., | ) | |
| | ) | |
| Noncustodial Parents/Appellants, | ) | |
| | ) | |
| v. | ) | UNPUBLISHED OPINION |
| | ) | |
| S.G., | ) | |
| | ) | |
| Custodial Parent/Respondent,[†] | ) | |
| | ) | |
| and | ) | |
| | ) | |
| THE DEPARTMENT OF SOCIAL AND | ) | |
| HEALTH SERVICES, | ) | |
| | ) | |
| Respondent. | ) | |

---

[†] By court order, and pursuant to RAP 3.4, we have changed the title of the appeal to protect the privacy of the parties and the children involved.

No. 37799-7-III
*T.B. et al. v. S.G.*

SIDDOWAY, J. — When older children are adopted following termination of their parent's parental rights and friction develops between the children and their adoptive parents, we learned in this case that, not infrequently, the children return for support to members of their birth family. Such was the case here. The birth mother, needing financial support from the adoptive parents for their two teens, sought enforcement services from the Department of Social and Health Service's (Department) Division of Child Support (DCS). Support was determined and ordered in an administrative hearing and was affirmed when judicially reviewed.

The adoptive parents cite language in RCW 13.34.200(1) to argue that in light of the termination of her parental rights, the birth mother "[has] no standing to appear at any further legal proceedings concerning the child." They argue that to be a custodial parent entitled to child support services under chapter 74.20A RCW, a person must be designated as such in accordance with chapter 26.09 RCW. We reject their arguments and affirm.

FACTS AND PROCEDURAL BACKGROUND

In 2013, the 10- and 9-year-old sons of S.G., their birth mother, were found dependent. We use pseudonyms for the boys: Ericson, for the older son, and Kelvin, for the younger. In 2014 the birth mother's parental rights to the boys were terminated. Foster parents T.B. and K.B. eventually adopted Ericson and Kelvin.

2

Ericson, and later Kelvin, ran away from their adoptive home. Beginning in or about September 2018, Kelvin, then approaching 15 years old, began residing with his birth mother. Ericson began residing with his birth mother in or about November 2018. He was then about 16 and a half years old.

In late November, the birth mother contacted the adoptive father and reported that Ericson had made statements suggesting suicidal thoughts. She asked him and his wife to appoint her Ericson's guardian so she could get him help. The adoptive father signed a notarized letter that stated he "hereby grant[s] guardianship to [S.G.] unless otherwise notified in writing." Clerk's Papers (CP) at 151. The adoptive mother refused to sign the letter, but there is no evidence she took efforts to regain custody of Ericson. The adoptive father wrote letters revoking his grant the following spring.

The adoptive father also agreed to provide some financial support for Kelvin, but refused to make payments directly to the birth mother. He made the payments to the birth mother's fiancée instead. His reason for providing the money to the fiancée was that unlike the birth mother, she had no criminal background.

In March 2019, the birth mother applied to DCS for services to obtain child support for Ericson and Kelvin from the adoptive parents. She acknowledged having received a total of $1,300 in financial support from them to date.

In May 2019, DCS served a notice and finding of financial responsibility on the adoptive parents. The notice stated that based on their reported incomes, beginning June

3

they would owe a monthly support obligation of $2,258.00 for Ericson and Kelvin ($1,129.00 per child per month). It stated they owed an accrued liability for prior periods of $3,580.20. The adoptive parents timely objected and requested an administrative hearing.

At a hearing before an administrative law judge (ALJ), the adoptive parents, represented by counsel, challenged the birth mother's standing to request support enforcement services in light of the termination of her parental rights. They also disputed whether Ericson and Kelvin were living with her a majority of the time. They admitted that the boys had not been living with them on or after March 27, 2019. The adoptive father admitted that he owed a duty of support for the boys to someone, but not the birth mother, since she "lost her rights as a parent." CP at 74.

The birth mother acknowledged at the hearing that Kelvin had a bench warrant for his arrest issued the prior year, had spent time in juvenile detention, and had left her home off and on to avoid being arrested.

The DCS representative testified at the hearing that it is "not infrequent" in "older adoption[ ]" situations for children who have been adopted following termination of their biological parents' parental rights to go back to the biological parents, and receive child support from the adoptive parents. CP at 67.

The ALJ found that the birth mother had standing, was the custodial parent of the two boys within the meaning of the applicable administrative regulations, and was

4

entitled to support. With respect to the residence of the children, he found that Kelvin had run away from his birth mother's home on May 20, 2019, was arrested in July 2019, and was ordered to serve 18 days' confinement. He found "[t]here is no evidence to whom [Kelvin] returned after confinement." CP at 5. The ALJ imposed a monthly support obligation of $2,124.00, financial responsibility for health care coverage and uninsured medical expenses, and ordered that the adoptive parents pay back child support totaling $9,662.58.

The adoptive parents sought judicial review. The superior court modified the amount of support awarded to reflect the lack of evidence that Kelvin resided with his birth mother after July 2019, but otherwise affirmed. The adoptive parents appeal.

ANALYSIS

Washington statutes authorize the Department to enforce support obligations against parents owing a duty of support not only where public assistance is received on behalf of a child, *see* RCW 74.20.040(4), but also, as in this case, where public assistance is not involved but an individual makes a request for support enforcement services. RCW 74.20.040(2). Indeed, to receive federal funding, the state is required to make nonassistance services available. 42 U.S.C. § 654(4)(A)(ii) (requiring state plans for child and spousal support to provide child support services to "any other child" if an application is made). The Department provides this service through DCS.

5

No. 37799-7-III
*T.B. et al. v. S.G.*

In response to a request for support enforcement services, the Department may serve a notice and finding of financial responsibility on "the person or persons required to pay support and the person entitled to receive support," requiring those persons to appear and show cause in an administrative hearing why the Department's finding of the fact and amount of financial responsibility is incorrect and should not be ordered. RCW 74.20A.055(1). "A person who has physical custody of a child has the same rights under this section as a parent with whom the child resides." *Id.*

Under Department regulations, a person can apply for nonassistance support enforcement services if they are the custodial parent or former custodial parent of a child. WAC 388-14A-2010(2). "Custodial parent" is defined by regulations to mean "the person, whether a parent or not, with whom a dependent child resides the majority of the time period for which the division of child support seeks to establish or enforce a support obligation." WAC 388-14A-1020. The birth mother applied for support enforcement services as a custodial parent.[1]

---

[1] Under Department regulations, the adoptive parents are "noncustodial parents." "Noncustodial parent" is defined to mean "the natural or biological parent, adoptive parent, adjudicated parent, presumed parent, responsible stepparent or person who signed and filed an affidavit acknowledging paternity or parentage, from whom the state seeks support for a dependent child. A parent is considered to be [a noncustodial parent] when for the majority of the time during the period for which support is sought, the dependent child resided somewhere other than with that parent." WAC 388-14A-1020.

6

In this appeal, Ericson and Kelvin's adoptive parents persist in their argument that the birth mother lacked standing to apply for support enforcement services in light of RCW 13.34.200(1), which describes the severance and termination of rights and standing that occurs upon the termination of parental rights pursuant to RCW 13.34.180. They also argue that persons cannot be found to be "custodial parents" in a proceeding under chapter 74.20A RCW based on a Department definition; they argue that such a designation must be made following a more rigorous process, by a court, in accordance with the provisions of chapter 26.09 RCW. We address their arguments in turn.

I. REASONABLY CONSTRUED, RCW 13.34.200(1) DOES NOT PROHIBIT THE CUSTODIAL BIRTH MOTHER FROM SEEKING NONASSISTANCE SUPPORT ENFORCEMENT SERVICES

The adoptive parents' first argument turns on language of RCW 13.34.200(1), which provides that upon the termination of parental rights pursuant to RCW 13.34.180

> all rights, powers, privileges, immunities, duties, and obligations, including any rights to custody, control, visitation, or support existing between the child and parent shall be severed and terminated *and the parent shall have no standing to appear at any further legal proceedings concerning the child, except as provided in RCW 13.34.215* . . . .

(Emphasis added.) They argue that the statute conclusively bars their sons' birth mother from having standing to seek support enforcement services for the boys.

We do not determine a statute's plain meaning by looking at one of its subsections in isolation; rather, we assess its plain meaning by "viewing the words of a particular provision in the context of the statute in which they are found, together with related

7

statutory provisions, and the statutory scheme as a whole." *Burns v. City of Seattle*, 161 Wn.2d 129, 140, 164 P.3d 475 (2007) (citing *Dep't of Ecology v. Campbell & Gwinn, LLC*, 146 Wn.2d 1, 11, 43 P.3d 4 (2002)). And the construction of two statutes—here, RCW 13.34.200(1) and RCW 74.20A.055—"shall be made with the assumption that the Legislature does not intend to create an inconsistency. Statutes are to be read together, whenever possible, to achieve a 'harmonious total statutory scheme . . . which maintains the integrity of the respective statutes.'" *State ex rel. Peninsula Neigh. Ass'n v. Dep't of Transp.*, 142 Wn.2d 328, 342, 12 P.3d 134 (2000) (alteration in original) (citation omitted) (quoting *Employco Pers. Servs., Inc. v. City of Seattle*, 117 Wn.2d 606, 614, 817 P.2d 1373 (1991)).

The adoptive parents' broad construction of subsection (1) of RCW 13.34.200 encounters problems as soon as we review RCW 13.34.200(2). Subsection (2) provides that an order terminating the parent and child relationship "shall not disentitle a child to any benefit due the child from any third person, agency, state, or the United States." The adoptive parents are, with respect to the termination order, a third party. Their construction of subsection (1) disentitles Ericson and Kelvin to the child support that their custodial parent, their birth mother, could otherwise seek to enforce, contrary to subsection (2).

Given that conflict and ambiguity and with the objective of harmonizing the statute with chapter 74.20A RCW, three canons of statutory construction have particular

importance. First, we assume that the legislature does not intend absurd results. *State v. Ervin*, 169 Wn.2d 815, 823-24, 239 P.3d 354 (2010). Second, we construe ambiguous statutes to avoid constitutional questions wherever possible. *Utter v. Bldg. Indus. Ass'n of Wash.*, 182 Wn.2d 398, 434-35, 341 P.3d 953 (2015). Third, we accord substantial weight to the agency's interpretation of an ambiguous statute within its expertise, provided that the interpretation does not conflict with the statute's language or underlying intent. *Port of Seattle v. Pollution Control Hr'gs Bd.*, 151 Wn.2d 568, 593, 90 P.3d 659 (2004).

The adoptive parents' construction of RCW 13.34.200(1) leads to absurd results. For a child adopted in his teenage years whose relationship with his adoptive family struggles, one place the teen might look for shelter and support is his birth family. "A custodial parent has no personal interest in the support funds collected and expended on behalf of his or her child, but rather acts as trustee for the child's benefit." *Hartman v. Smith*, 100 Wn.2d 766, 768, 674 P.2d 176 (1984). It is absurd that financial support a dependent child needs, and for which his adoptive parents are obliged, should be denied solely because the person who would qualify as a custodial parent entitled to apply for support enforcement services is his birth parent.

The adoptive parents' construction of the statute presents constitutional problems by limiting a birth parent's access to the courts and denying her or him equal protection. The right of access to the courts is an aspect of the United States Constitution's First

9

Amendment right to petition the government for redress of grievances, and there are constitutional limits to legislatively authorizing the injunction or dismissal of what would otherwise would be a cognizable claim. *Bill Johnson's Rests., Inc. v. Nat'l Lab. Rels. Bd.*, 461 U.S. 731, 741, 103 S. Ct. 2161, 76 L. Ed. 2d 277 (1983). In *Bill Johnson's*, the Supreme Court held that while federal labor law afforded a basis for the National Labor Relations Board to enjoin a *frivolous* retaliatory lawsuit by an employer, it could not constitutionally authorize the Board to enjoin a *well-founded* lawsuit, even if the employer's motive was retaliatory. *Id.* at 741-43. While RCW 13.34.200(1) can reasonably be construed as denying standing to a parent to bring legal action that is directly inconsistent with and undermines the termination of her rights as a parent, a broader denial of standing presents First Amendment problems.

The adoptive parents' construction of the statute also deprives the birth mother of her right to equal protection of the laws. The right to equal protection under the law guaranteed by the United States Constitution, amend. XIV, § 1, and by the privileges and immunities clause of the Washington Constitution, art. I, § 12, are substantially identical. *State v. Shawn P.*, 122 Wn.2d 553, 559-60, 859 P.2d 1220 (1993). Both require that persons similarly situated with respect to the legitimate purpose of the law be similarly treated. *Id.* Because the right to petition for redress of grievances is one of the fundamental rights guaranteed by the First Amendment, courts have held that a law impinging upon the right is subject to strict scrutiny. *Ruiz v. Hull*, 191 Ariz. 441, 457,

10

957 P.2d 984 (1998) (citing *United Mine Workers of Am., Dist. 12 v. Ill. State Bar Ass'n*, 389 U.S. 217, 222, 88 S. Ct. 353, 19 L. Ed. 2d 426 (1967)). As construed by the adoptive parents, if the birth mother and one of her sons are involved in an automobile accident at some future date and she is injured as a proximate result of her son's negligence, she would lack "standing" to sue for damages. The same is true of the myriad of tort, contract, property, statutory and other claims she might have that would be viable against any other defendant. And as the adoptive father conceded during the administrative hearing, the birth mother's fiancée, with whom Ericson and Kelvin also resided, could have applied for DCS's assistance in obtaining financial support for the boys from him and his wife. We conclude that this different treatment of the birth mother would fail even the most generous "rational basis" standard for evaluating challenged classifications.

Chapters 13.34 RCW and 74.20A RCW are both statutory schemes within the Department's expertise. RCW 74.20.040(4) authorizes the Department to enforce and collect support obligations, including performing related services, under chapters 74.20 and 74.20A RCW. The legislative intent of chapter 74.20 RCW is very clear:

> The purpose of this chapter is to provide the state of Washington, through the department of social and health services, a more effective and efficient way to effect the support of dependent children by the person or persons who, under the law, are primarily responsible for such support and to lighten the heavy burden of the taxpayer, who in many instances is paying toward the support of dependent children while those persons primarily responsible are avoiding their obligations.

11

No. 37799-7-III
*T.B. et al. v. S.G.*

RCW 74.20.010.

The Department harmonizes RCW 13.34.200(1) with chapter 74.20A RCW by construing the denial of standing to a parent whose rights to a child have been terminated as limited to actions to reestablish the previously-severed legal parent-child relationship; or, stated differently, actions "to change what happened." Br. of Resp't at 16. The Department's construction does not conflict with the statute's intent, and it avoids absurd results and constitutional problems. Thus construed, the statute does not prevent a birth parent from seeking enforcement support services under the circumstances presented in this case.

Two reported decisions on which the adoptive parents rely are consistent with the Department's construction of RCW 13.34.200(1). In *In re Dependency of G.C.B.*, 73 Wn. App. 708, 709, 870 P.2d 1037 (1994), an infant was declared dependent, having been abandoned by her mother. After dependency was established, G.C.B. was returned to his mother's care for a time, but the mother soon notified the Department that she wished to return G.C.B. to foster care and she consented to termination of her parental rights. An order terminating parent-child relationship was entered. The biological father's rights were also terminated, and the Department was granted permanent legal custody of G.C.B., who was then approximately 2½ years old. *Id.* at 711. Approximately nine months later, the Department planned to place G.C.B. in foster care

12

with a same sex couple considered by the Department to be a prospective adoptive home. *Id.* The mother filed a petition to revoke consent to her relinquishment of G.C.B., claiming duress, fraud, that she had not been competent and, tellingly, that having a same sex couple from Seattle adopt the child was her "'worst nightmare.'" *Id.* at 712.

The mother and her husband filed a petition to adopt G.C.B. and sought an order that he be placed in their care as prospective adoptive parents. *Id.* at 713. The Department opposed the motion. *Id.* A month later, over the Department's objection and request for an evidentiary hearing, the trial court required placement with the mother and her husband. The Department sought emergency discretionary review, which was granted. *Id.* at 715.

Addressing an issue that had not been raised by either party, Division One of this court found that in light of RCW 13.34.200, the mother's adoption petition was "fatally flawed and should have been dismissed without any hearing on the merits of placement whatsoever." *Id.* at 716. The court stated that "[b]y depriving a terminated parent of standing in all future legal proceedings concerning the child, the Legislature recognized that entry of a valid termination order severing the relationship between the child and parent constitutes a final, unassailable determination that such permanent termination is in the best interest of the child." *Id.* at 717. More precisely, it concluded "that upon entry of a termination order pursuant to RCW 13.34.180-.190, a parent whose rights have

been terminated *may not relitigate that issue* through a petition for adoption, or through any other legal proceeding." *Id.* (emphasis added).

In *In re Custody of R.R.B.*, 108 Wn. App. 602, 31 P.3d 1212 (2001), the court considered whether a biological parent who consented to his child's adoption under chapter 26.33 RCW had standing to later petition for nonparental custody under former RCW 26.10.030(1) (2000). Under RCW 26.33.130(2), when a parent-child relationship is terminated so a child can be adopted, the order terminating the relationship generally divests the parent and the child of legal rights, powers, privileges, immunities, duties, and obligations with respect to each other, and RCW 26.33.130(4) provides that the relinquishing parent is not entitled to notice of adoption proceedings and does not have "any right to contest the adoption or otherwise to participate in the proceedings unless an appeal from the termination order is pending or unless otherwise ordered by the court." The court in *R.R.B.* held that RCW 26.33.130(4) prohibits a relinquishing parent from participating in the initial adoption proceedings but does not preclude the parent from participating in an entirely separate proceeding. *Id.* at 608. *R.R.B.* has no application to this case. It is cited by the adoptive parents only for its dictum distinguishing *G.C.B.* as involving RCW 13.34.200(1) and quoting the statute, accurately, as providing that "'the parent shall have no standing to appear at any further legal proceedings concerning the child.'" *Id.* at 609 (emphasis omitted).

14

No. 37799-7-III
*T.B. et al. v. S.G.*

Reasonably construed, and reasonably applied in *G.C.B.*, RCW 13.34.200(1)

prevents a parent whose rights have been terminated from bringing an action to

reestablish the parent-child relationship or an action that otherwise relies on the parent's

biological relationship to assert rights the parent no longer has. It does not deprive a

parent whose rights have been terminated from seeking support enforcement services

under the circumstances presented here.

II.     THE ALJ DID NOT EXCEED HIS AUTHORITY IN FINDING THAT THE BIRTH MOTHER
        WAS A CUSTODIAL PARENT FOR PURPOSES OF CHAPTERS 74.20 AND 74.20A RCW

The adoptive parents' remaining contention is that the ALJ lacked authority to

determine who is a custodial parent. They provide the following explanation why the

ALJ could not find the birth mother to be a custodial parent under the Department's

regulatory definition:

> RCW 26.10 (as well as RCW 26.09), caselaw and court rules provide
> a much more detailed as well as a stricter standard to make such
> determination especially when the issue is contested. A nonparental
> party needs to set forth specific facts for adequate cause or the action is
> dismissed in order to even have the matter considered by the court.

Appellant's Opening Br. at 10.

Chapter 26.09 RCW includes, and before it was repealed,[2] chapter 26.10 RCW

included provisions under which the superior court determines and enters orders

establishing the respective rights of a child's parents or a third party to residential or

_____

[2] The provisions of chapter 26.10 RCW were repealed effective January 1, 2021.
LAWS OF 2020, ch. 312, §§ 905, 907(2).

15

visitation time. *E.g.*, RCW 26.09.187(3) ("The court shall make residential provisions for each child."). By contrast, "The ALJ has no authority to determine custody or visitation issues." WAC 388-14A-3140(6). The ALJ had no authority of the sort provided by chapter 26.09 RCW, made no such determination, and entered no such order.

The ALJ's authority if an application for an adjudicative proceeding is filed includes "determin[ing] the past liability and responsibility, if any, of the person required to pay support and . . . the amount of periodic payments to be made in the future." RCW 74.20A.055(5). Making that determination requires the ALJ to determine, *as a matter of fact*—not to order, *as a matter of law*—whether an individual is a person entitled to receive support. RCW 74.20A.055. That will include determining whether the applicant for services is a "custodial parent" within the meaning of the relevant regulations.

The ALJ did not exceed his authority in finding that the birth mother was Ericson's and Kelvin's custodial parent within the meaning of the support enforcement laws and regulations.

III. ATTORNEY FEES

The adoptive parents request an award of reasonable attorney fees and costs if we dismiss the administrative orders. They have not identified a law that grants them a right to recover fees and costs on review as required by RAP 18.1(a), nor are we dismissing the administrative orders. Their request for fees is denied.

16

No. 37799-7-III
*T.B. et al. v. S.G.*

Affirmed.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Siddoway, J.

WE CONCUR:

_____
Pennell, C.J.

_____
Lawrence-Berrey, J.

17