United States Court of Appeals,

Fifth Circuit.

No. 91–4617.

EMERY WORLDWIDE, a C.F. COMPANY, Petitioner,

v.

NATIONAL LABOR RELATIONS BOARD, Respondent.

July 24, 1992.

Petition for Review of an Order of the National Labor Relations Board

Before BROWN, GARWOOD and EMILIO GARZA, Circuit Judges.

JOHN R. BROWN, Circuit Judge:

The sole issue before us is whether the Union violated Sections 8(b)(1)(A) and 8(b)(3) of the National Labor Relations Act (NLRA) by seeking a merger of two bargaining units via the arbitration process. Because the Union's objective was illegal, we hold that it violated the NLRA.

In June, 1987, Emery Air Freight acquired Purolator Courier Corporation. For at least fifteen years, Emery route employees (employees who pick up and deliver freight), called territorial representatives, had been represented by a collective bargaining agreement between Emery and Teamsters Local Union No. 988[1] (Local 988 or the Union). At the time of the Purolator acquisition, the territorial representatives were covered by an agreement effective from December 1, 1985 to November 30, 1988.

In October, 1988, Emery recognized Local 988 as the collective bargaining agent for the Purolator route employees, called courier guards. The responsibilities of the Purolator courier guards were similar to those of the Emery territorial representatives, except that the courier guards also performed other duties. Negotiations between Emery and Local 988 resulted in a collective

[1]The unshortened title of the Teamsters is the "International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America, AFL–CIO."

bargaining agreement covering the Purolator courier guards from November 2, 1988 to November 2, 1991. At no time during these negotiations did Local 988 seek either a joint contract to cover both Emery territorial representatives and Purolator courier guards or coverage for Purolator employees under the existing Emery agreement.

In the Fall of 1988, Emery combined the Purolator and Emery terminals in Houston. Members of both collective bargaining units worked at each terminal and shared the same terminal manager, dispatchers, and supervisors. By agreement of the parties, the contract covering the Emery territorial representatives was extended beyond November 30, 1988 on a day-to-day basis.

On April 17, 1989, Consolidated Freightways, Inc. purchased Emery and its wholly-owned subsidiary Purolator, and from that time forward, Emery and Purolator operated under a single logo of "Emery Worldwide, a C.F. Company" (Emery Worldwide). They used a single waybill and overnight package for all transportation of freight. Although Emery and Purolator still followed different routes in Houston pursuant to their respective agreements, there was complete interchange of vehicles (except line haul vehicles), and Emery territorial representatives could pick up from and delivery to customers who previously had been Purolator customers (and vice versa). However, under their respective collective bargaining agreements, the Emery territorial representatives (approximately 47 employees) and the former Purolator courier guards (approximately 70 employees) continued to maintain separate seniority lists and starting times and were subject to different wages, benefits, job classifications and layoff procedures. No transfers between the two units occurred. Indeed, in December, 1989, when Emery temporarily used a Purolator unit employee to substitute for an absent Emery unit employee, Local 988 filed and eventually won a grievance prohibiting such substitutions.

In negotiations with Emery Worldwide in the Fall of 1989, Local 988 sought to cover the Emery and former Purolator route employees in Houston under one collective bargaining agreement.

These negotiations led to the filing of a grievance by Local 988 on October 2, 1989. The grievance sought application of the extended 1985–1988 Emery contract to the former Purolator courier guards on the ground that the operations of Emery and Purolator had been merged. The Emery contract contained wage and hours terms more favorable to employees than those in the Purolator contract. Emery Worldwide denied the grievance on October 11, 1989, citing a provision of the Emery contract that excluded "[e]mployees already covered by an existing Union Agreement." Local 988 demanded arbitration on December 7, 1989.

Emery Worldwide then commenced this proceeding by filing an unfair labor practice charge with the NLRB, alleging that Local 988 was attempting through the grievance-arbitration process to force the merger of two historically separate bargaining units, in violation of Sections 8(b)(1)(A) and 8(b)(3) of the NLRA. Section 8(b)(1)(A) prohibits a labor organization from restraining or coercing employees in the exercise of their rights guaranteed by § 7. Section 7 includes the rights to form and join a labor organization, to bargain collectively through representatives of their own choosing, and to refrain from joining a labor organization. 29 U.S.C. §§ 157, 158(b)(1)(A). Section 8(b)(3) prohibits a labor organization from refusing to bargain collectively with the employer. 29 U.S.C. § 158(b)(3).

The ALJ agreed with Emery Worldwide, finding that there were two separate and distinct collective bargaining units, and that Local 988 could not force upon Emery Worldwide an enlargement or merger of an existing bargaining unit. On June 10, 1991, the NLRB reversed and dismissed Emery Worldwide's complaint, finding that Local 988's objective was not to compel a merger, but instead to simply obtain a declaration that the two units had already been merged by Emery Worldwide, entitling the former Purolator employees to rights under the Emery contract. Because Local 988 had raised a *bona fide* contractual issue, the three-member NLRB panel thus held that its grievance and arbitration request could not constitute unlawful restraint or coercion under the NLRA. 303 N.L.R.B. No. 41, 137 L.R.R.M. 1225 (1991). Emery brings this appeal.

Express to the Federal Question:  Was Merger via Arbitration Illegal?

We must uphold the Board's decision if it is "reasonably defensible," *Ford Motor Co. v. N.L.R.B.,* 441 U.S. 488, 497, 99 S.Ct. 1842, 1849, 60 L.Ed.2d 420 (1979), and if it is supported by substantial evidence.  *N.L.R.B. v. General Truckdrivers,* 778 F.2d 207, 213 (5th Cir.1985) (citing *Universal Camera Corp. v. N.L.R.B.,* 340 U.S. 474, 71 S.Ct. 456, 95 L.Ed. 456 (1951)).  We conclude that the NLRB has failed to meet either standard.

In a long line of cases, the NLRB has clearly ruled that after agreeing to distinct collective bargaining units, a union may not through the arbitration dispute-settlement mechanism force their merger.  *Chicago Truck Drivers (Signal Delivery),* 279 N.L.R.B. 904, 122 L.R.R.M. 1100 (1986); *Service Employees Int'l Union Local 32 B–32J,* 258 N.L.R.B. 430, 108 L.R.R.M. 1157 (1981); *IBEW Local 323, 242* N.L.R.B. 305, 101 L.R.R.M. 1179 (1979);  *Utility Workers Union Local 111, 203* N.L.R.B. 230, 83 L.R.R.M. 1099 (1973).  Of course, the Board may jettison its own precedents if it has "adequately explicated the basis of its [new] interpretation."  *See N.L.R.B. v. J. Weingarten, Inc.,* 420 U.S. 251, 267, 95 S.Ct. 959, 968–69, 43 L.Ed.2d 171 (1975).  An administrative agency is not allowed to change direction without sufficient explanation of what it is doing and why.  See *Motor Vehicle Mfr. Ass'n v. State Farm Mut. Auto. Ins. Co.,* 463 U.S. 29, 57, 103 S.Ct. 2856, 2874, 77 L.Ed.2d 443 (1983);  see also *International Ass'n of Bridge Workers Local No. 111 v. N.L.R.B.,* 792 F.2d 241, 247–48 (D.C.Cir.1986) and *International Union, UAW v. N.L.R.B.,* 802 F.2d 969, 974 (7th Cir.1986).  Here, the Board fails to offer any or a sufficient basis for departing from its past consistent decisions.

This case is almost identical to Chicago Truck Drivers.  279 N.L.R.B. 904, 122 L.R.R.M. 1100 (1986).  There, both Signal and LTI were controlled by the same holding company.  Signal had four facilities in the Chicago area from which it hauled freight primarily for Sears.[2]  LTI, operating

---

[2]These four facilities included two "home delivery" operations, one "city shuttle" operation and a fourth facility engaged in the business of interstate hauling.

out of Elmhurst, Illinois, had a "home delivery" service and a "general cartage" division. Among other things, it provided drivers for Signal's "city shuttle" service in Chicago. Signal and LTI had concurrent collective bargaining agreements with the union covering separate units of employees. Each unit was covered by a separate collective bargaining agreement and each unit had a separate seniority list. "Bumping"[3] was forbidden. The union filed a grievance seeking to merge the units. Specifically, the union wanted one contract covering its employees providing service to Sears and contended that the three seniority lists should be combined into one. After the grievance committee became deadlocked, the union demanded arbitration. Signal and LTI refused to participate in the arbitration and LTI filed a charge with the NLRB, alleging violations of the NLRA. The NLRB found in favor of LTI, stating that the enlargement of a bargaining unit was not a mandatory subject of bargaining under the NLRA and that the Union's use of the grievance-arbitration procedure for this purpose violated Sections 8(b)(1)(A) and 8(b)(3) of the Act. The NLRB reasoned that the union was "seeking to force, through arbitration, the merger of historically separate "bargaining' units," constituting an "illegal objective" under federal law. 279 N.L.R.B. at 907.

The NLRB most recently dealt with the "illegal objective" issue in *Local 776, Int'l Bhd. of Teamsters,* 305 N.L.R.B. No. 114 (Dec. 11, 1991), *pet. for review pending,* No. 92–3000 (3d Cir.). In this case, the Board held that a union violated the NLRA by continuing to seek enforcement of an arbitration award because the union's suit had an "illegal objective." The union sought through arbitration to apply its collective-bargaining agreement to employees whom the Board had already determined to be outside the bargaining unit. Because the Board found that the union insisted, via the filing of a lawsuit, on bargaining for a change in the scope of the existing bargaining unit, it held that the lawsuit fell within the "illegal objective" exception to the *Bill Johnson's* case,[4] thus

---

[3]To "bump" an employee is to transfer that employee from one unit to another with full seniority rights.

[4]In *Bill Johnson's Restaurants v. N.L.R.B.,* 461 U.S. 731, 103 S.Ct. 2161, 76 L.Ed.2d 277 (1983), the Supreme Court held that a lawsuit could be condemned as an unfair labor practice if two conditions were met: (1) the suit had a retaliatory motive; and (2) the lawsuit lacked a reasonable basis in fact or law. The Court, however, specifically refused to apply this restrictive

constituting an unfair labor practice in violation of Section 8(b)(3) of the Act, and restrained and coerced employees in violation of Section 8(b)(1)(A). Here, as in *Chicago Truckdrivers, supra,* the Emery and Purolator units had separate seniority lists and separate benefits, and there were no transfers between the two units. Moreover, when a Purolator unit employee substituted for an absent Emery unit employee, the Union successfully filed a grievance. The Union can not now seriously in good faith urge this court that the two units were effectually merged into one bargaining unit. Clearly, the units were two separate and distinct bargaining units.[5] Although the Board found a bona fide contractual issue with respect to whether a merger in effect had occurred, we are not persuaded by its characterization. Rather, we agree with the ALJ that the Union attempted unlawfully to force the merger of two historically separate bargaining units via the arbitration process.[6] The Union sought to have an arbitrator declare "that all affected employees be made whole and that the Emery Worldwide contract cover all bargaining unit employees." We conclude that the Union's use of the arbitration process for this purpose constitutes an illegal objective and thus violates Sections 8(b)(1)(A) and 8(b)(3) of the Act, because in the words of the Supreme Court, "The law compels a party to submit his grievance to arbitration only if he has contracted to do so." *Litton Fin. Printing Div. v. N.L.R.B.,* ⸺ U.S. ⸺, ⸺, 111 S.Ct. 2215, 2222, 115 L.Ed.2d 177, 193 (1991). In response, the Board relies upon *General Teamsters Union Local 483 (Ida Cal Freight Lines),* 289 N.L.R.B. 924, 130 L.R.R.M. 1277 (1988) to support its decision. In *Ida Cal,* the issue was whether an existing collective bargaining agreement covered employees whose status was unclear. The union argued that certain employees were covered under their collective-bargaining agreement, while the

---

test to situations (1) where the law suit was preempted by the NLRA; or (2) *where the lawsuit had an illegal objective under federal law.* (Emphasis added.) In either of these two cases, the Court stated that the legality of the lawsuit enjoys no special protection under *Bill Johnson's.*

[5]Both parties fully agree that this case does not involve the accretion doctrine. Accretion occurs when a group of new employees are added to an existing bargaining unit. *See N.L.R.B. v. Stevens Ford, Inc.,* 773 F.2d 468, 473 (2d Cir.1985). In this case, both the Purolator and Emery units had each formed separate bargaining units.

[6]Even if we adopt the Union's characterization, i.e., that they merely requested the arbitrator to determine whether a merger had already occurred, an arbitrator is without power to merge separate units. An ordered merger of two distinct bargaining units is illegal and in contravention of past NLRB decisions.

employer contended otherwise on the basis that they were independent contractors. The union in *Ida Cal* filed a grievance, and requested arbitration to resolve whether the employees in dispute were covered by the collective-bargaining agreement. Although the Board found no violation of the NLRA, the *Ida Cal* case is easily distinguishable from this case. Here, there was clearly two separate bargaining units governed by two separate collective bargaining agreements. The Union does not in any way suggest that the status of either group was ambiguous. To the contrary, the Union recently filed and won a grievance based largely on the distinctiveness and separateness of the two bargaining units when a one Purolator employee was used temporarily to replace an Emery employee.

Lastly, the Board attempts to persuade this court that the strong national policy favoring arbitration requires us to uphold its ruling in favor of the Union, citing *Carey v. Westinghouse Elec. Corp.,* 375 U.S. 261, 84 S.Ct. 401, 11 L.Ed.2d 320 (1964). While we recognize the benefits of arbitration and advocate its use, we reiterate that we can not ignore clear Supreme Court authority which dictates that arbitration is strictly a creature of contract. *Litton Fin. Printing Div. v. N.L.R.B.,* ——— U.S. at ———, 111 S.Ct. at 2224, 115 L.Ed.2d at 195. Simply put, this means that "a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *United Steelworkers v. Warrior and Gulf Navigation Co.,* 363 U.S. 574, 582, 80 S.Ct. 1347, 1353, 4 L.Ed.2d 1409 (1960). Our examination of whether the parties agreed to arbitrate the merger issue leads us to the conclusion that no such agreement was ever contemplated, thus making the Union's arbitration demand unlawful in violation of the NLRA.[7]

Accordingly, we hold that the Union's attempt to have the Purolator employees brought within the Emery contract is clearly an "illegal objective." The NLRB has so significantly departed from the principles of its past decisions, let alone the decisions of this and other courts, as to necessitate a reversal of its decision under review and the rendering of a ruling in favor of Emery Worldwide.

---

[7]The only method by which the Union could have lawfully achieved its objective would be through an NLRB unit clarification proceeding. Indeed, even the NLRB concedes in its brief that a unit clarification proceeding was an obvious option available to the Union.

ENFORCEMENT OF ORDER DENIED.