handled a gun which had recently been fired.[9] Trial trans. July 17, 1991, at 65–68.

We have not recapped all the evidence presented by the government. However, that which we noted demonstrates that the government had both the scientific and circumstantial evidence from which the jury could have convicted Riley for the murder of Bing Joseph. Thus the conviction did not hinge on the testimony of a four-year-old child.

## IV.

For the above stated reasons, we will affirm the judgment of the district court.

CHAUFFEURS, TEAMSTERS AND HELPERS LOCAL 776 AFFILIATED WITH INTERNATIONAL BROTHERHOOD OF TEAMSTERS, AFL–CIO Petitioner No. 92–3000,

v.

NATIONAL LABOR RELATIONS BOARD Respondent, Rite Aid Corporation, Intervenor.

NATIONAL LABOR RELATIONS BOARD Petitioner No. 92–3068,

v.

CHAUFFEURS, TEAMSTERS AND HELPERS LOCAL 776 AFFILIATED WITH INTERNATIONAL BROTHERHOOD OF TEAMSTERS, AFL–CIO Respondent.

Nos. 92–3000, 92–3068.

United States Court of Appeals, Third Circuit.

Submitted Under Third Circuit Rule 12(6) Aug. 3, 1992.

Decided Aug. 26, 1992.

9. At the time Officer George performed the test on Riley, he claimed to be right-handed. However, F.B.I. Agent Luis Rivera testified that he had the opportunity to observe Riley when he was writing and noticed that Riley was using his left hand.

Ira H. Weinstock, Ronald T. Tomasko, Law Office of Ira H. Weinstock, Harrisburg, Pa., for petitioner-respondent Chauffeurs, Teamsters and Helpers Local 776 affiliated with Intern. Broth. of Teamsters, AFL–CIO.

Jerry M. Hunter, Gen. Counsel, Aileen A. Armstrong, Deputy Associate Gen. Counsel, Peter Winkler, Supervisory Atty., Julie Brock Broido, Senior Atty., N.L.R.B., Washington, D.C., for respondent-petitioner N.L.R.B.

Bruce D. Bagley, McNees, Wallace & Nurick, Harrisburg, Pa., for intervenor-respondent Rite Aid Corp.

Before: GREENBERG, ALITO, and ALDISERT, Circuit Judges.

OPINION OF THE COURT

GREENBERG, Circuit Judge.

I.

BACKGROUND

This case is before the court on a petition for review and a cross-application for enforcement of a decision and order of the National Labor Relations Board reported at 305 NLRB No. 114 (1991). We will deny the petition for review and will enforce the order.

The case arises from a representational dispute. The employer, Rite Aid Corpora-tion, operates a large chain of retail drug stores. It has several central distribution centers, including one in Shiremanstown, Pennsylvania, to service its stores. The Shiremanstown center has been responsible in a portion of Rite Aid's business area for the shipping, sorting and storing of unsold goods and for the processing of returned goods. Historically, the petitioner, Chauffeurs, Teamsters and Helpers Local 776, affiliated with the International Brotherhood of Teamsters, AFL–CIO, has represented the employees at the Shiremanstown distribution center. The collective bargaining agreement between the union and Rite Aid provides for final and binding arbitration of grievances.

In August 1987, as a result of increasing business, Rite Aid opened a Central Returns Warehouse in Shiremanstown to process returned goods, a function previously allocated to the distribution centers. Rite Aid hired 27 nonunion employees for this warehouse and reassigned distribution center employees who previously handled returned goods to other distribution center duties. These changes led the union to file grievances on the ground that it should represent the warehouse employees. The union was successful, for on July 14, 1988, an arbitrator concluded that Rite Aid violated the union recognition clause of the collective bargaining agreement by failing to apply it to the returns warehouse. The arbitrator's award required Rite Aid to apply the provisions of the collective bargaining agreement governing the Shiremanstown distribution center to the warehouse and to make certain payments and grant specified benefits to the warehouse employees. In addition, the arbitrator ordered that Rite Aid make the union whole for lost dues and initiation fees.

Rite Aid sought to circumvent the arbitration award by filing a unit clarification petition on August 18, 1988, with the National Labor Relations Board, with the object of obtaining a decision excluding the warehouse employees from the distribution center representation unit. Like the union, Rite Aid was successful in the procedure it initiated. The Board's regional director, on

February 7, 1989, issued a decision and order excluding the warehouse employees from the distribution center unit on the ground that the facilities were basically different and the warehouse was not an "accretion" to the distribution unit. The regional director observed that this conclusion was consistent with the Board's reluctance to accrete unrepresented employees to existing units, which would effectively deny the employees an opportunity to express their preferences in a secret ballot election.

The proceedings separately instituted by Rite Aid and the union moved in tandem, for the union filed a suit on January 5, 1989, in the district court under section 301 of the Labor Management Relations Act, 1947, 29 U.S.C. § 185, seeking to enforce the arbitration award. This time, however, the union was not successful, for on September 29, 1989, the district court dismissed the case and refused to enforce the award, as the court regarded the case as involving a representational rather than a contractual issue. The court accordingly held that in making his award the arbitrator had gone beyond his limited authority to interpret the collective bargaining agreement. The union appealed, but we affirmed the order of the district court and the Supreme Court denied certiorari. *Teamsters Local Union No. 776 v. Rite Aid Corp.*, 902 F.2d 1562 (3d Cir.) (table), *cert. denied,* —— U.S. ——, 111 S.Ct. 249, 112 L.Ed.2d 208 (1990).

The union did not accept the regional director's decision and order of February 7, 1989, excluding the warehouse employees from the distribution center unit. Instead, it filed a request for review which the Board denied by order of April 28, 1989, concluding that the request raised "no substantial issues warranting review." The union nevertheless moved before the Board for reconsideration of the order of April 28, 1989, but this motion was denied as untimely. The union then sought leave to appeal from the Board so that it would consider the union's motion for reconsideration out of time, but the Board denied this motion as well.

What may be regarded as the third line of action in this controversy, and the one leading directly to the case before us, was initiated on May 15, 1989, when Rite Aid filed a charge with the Board against the union. Rite Aid asserted that the union was engaged in unfair labor practices in violation of section 8(b)(1)(A), (2), and (3) of the NLRA, 29 U.S.C. § 158(b)(1)(A), (2) and (3), by "continuing to seek enforcement of the [arbitration] award, despite the fact that the Board has already determined that the [warehouse] employees are excluded" from the bargaining unit. General Counsel of the Board issued a complaint against the union on June 20, 1989, reflecting the allegations Rite Aid made in its charge.

Subsequently, General Counsel made a motion for summary judgment which the Board granted in a decision and order of December 11, 1991. The Board first explained that there were no facts in dispute requiring resolution at a hearing. It then reviewed the facts with respect to the establishment of the returns warehouse and described the procedural history of the arbitration, district court and Board proceedings. After the Board set forth the contentions of the parties, it indicated "that the underlying question is representational rather than contractual." It then held "that the arbitrator's decision is not controlling because it was superseded by the superior authority of the Board's subsequent unit clarification Decision and Order." *See Carey v. Westinghouse Electric Corp.*, 375 U.S. 261, 84 S.Ct. 401, 11 L.Ed.2d 320 (1964). The Board then held that the union, in seeking enforcement of an arbitration award in direct conflict with the unit clarification determination, effectively "sought to apply the collective-bargaining agreement to employees whom the Board has already determined to be outside of the parties' bargaining unit." This was a violation of section 8(b)(3) of the NLRA because the union was insisting on a change in the scope of the bargaining unit. The Board also held that the union's insistence that its entire contract applied to the warehouse employees, including the union security provisions, restrained and coerced employees in violation of section 8(b)(1)(A)

of the NLRA. Further, the Board held that the union attempted to cause Rite Aid to discriminate against the warehouse employees in violation of section 8(a)(3). Thus, the union had engaged and was engaging in unfair labor practices in violation of section 8(b)(2) of the NLRA.

The Board next discussed *Bill Johnson's Restaurants, Inc. v. NLRB*, 461 U.S. 731, 103 S.Ct. 2161, 76 L.Ed.2d 277 (1983). The Board indicated that in *Bill Johnson's* the Supreme Court held that it could be an unfair labor practice to file a lawsuit if the plaintiff in bringing it "had a retaliatory motive, *i.e.*, it was motivated by a desire to retaliate against the exercise of a Section 7 [29 U.S.C. § 157] right; and (2) the lawsuit lacked a reasonable basis in fact or law." The Board indicated, however, that the Court said it was not addressing a case in which the lawsuit was preempted by the NLRA or had an objective that was illegal under federal law. A party bringing a preempted case or a case with an illegal objective would commit an unfair labor practice without regard for its motivation or for whether the suit was reasonably based in fact or law.

The Board said that it was clear from *Bill Johnson's* that the Court treated an "illegal objective" as something other than a retaliatory motive. The Board then held that an objective was illegal if it was incompatible with a Board ruling. In this case, notwithstanding the regional director's decision and order of February 7, 1989, that the warehouse employees were not part of the distribution center unit, and the Board's subsequent denial of the union's request for review, the union continued to press its lawsuit. Thus, the Board concluded that the lawsuit sought an illegal objective so that its prosecution was an unfair labor practice from and after February 7, 1989, in violation of section

8(b)(1)(A), (2), and (3) of the NLRA. By way of remedy, the Board directed the union to cease and desist from maintaining its suit and required it to reimburse Rite Aid for the costs and counsel fees Rite Aid incurred after February 7, 1989, in defending against the union's action in the district court and on the appeals from the district court's order.

The matter is now before us because the union has filed a petition for review of the Board's decision and order and the Board has filed a cross-application for enforcement of its order. We have jurisdiction under 29 U.S.C. § 160(e) and (f). We will deny the petition for review and will enforce the Board's order of December 11, 1991.

## II.

### ANALYSIS

We are principally concerned with two sources of law.[1] The first is the case law defining the authority of the Board in representational issues. It is, of course, well-established that the Board has primary jurisdiction over representational issues. *NLRB v. Paper Manufacturers Co.*, 786 F.2d 163, 166–67 (3d Cir.1986); *Chas. S. Winner, Inc. v. Teamsters Local Union No. 115*, 777 F.2d 861, 863 (3d Cir.1985). Accordingly, following an arbitrator's resolution of a representational issue, if "the Board disagree with the arbiter, by ruling, for example, that the employees involved in the controversy are members of one bargaining unit or another, the Board's ruling would, of course, take precedence...." *Carey v. Westinghouse Electric Corp.*, 375 U.S. at 272, 84 S.Ct. at 409. Thus, in *NLRB v. Paper Manufacturers*, we indicated that: "[o]ur holding that accretion, like successorship, is not a matter that can

---

1. While we must accept the Board's findings of fact "if supported by substantial evidence on the record as a whole," 29 U.S.C. § 160(e), inasmuch as there is no dispute regarding the historical record, that standard of review is easily applied here. While our review of questions of law is plenary, we nevertheless give deference to the Board's interpretation of the NLRA. *Tubari Ltd., Inc. v. NLRB*, 959 F.2d 451, 453 (3d

Cir.1992); *International Bhd. of Elec. Workers, Local 803 v. NLRB*, 826 F.2d 1283, 1287 (3d Cir.1987). Even though that deferential standard might be inapplicable to constitutional questions raised by *Bill Johnson's*, we need not dwell on the point for we would reach our result on these issues even if we disregarded the Board's position.

be resolved by contract arbitration is consistent with the position of the Board that it will not defer to arbitration on representation issues." 786 F.2d at 167. We again recently acknowledged the primacy of the Board in representational issues when we explained that, "[i]f an NLRB determination on the definition of the proper bargaining unit conflicts with an arbitration award, the NLRB decision will prevail." *Eichleay Corp. v. International Ass'n of Iron Workers,* 944 F.2d 1047, 1056 (3d Cir. 1991), *cert. dismissed,* —— U.S. ——, 112 S.Ct. 1285, 117 L.Ed.2d 510 (1992).

■ Thus, it should have been obvious to the union from and after February 7, 1989, when the regional director issued his decision and order excluding the warehouse employees from the distribution center unit, that the arbitration award was ineffective and that the union could not hope to have it enforced in its district court action. The only escape from this result could have been an administrative proceeding before the Board to review the regional director's decision and order or, perhaps, a judicial proceeding initiated by a petition for review of the action of the Board. But the union was unsuccessful in its efforts to obtain administrative review of the regional director's decision and order, and it never filed a petition with this court for further review of the unit clarification determination. In the circumstances, then, unless some overarching principle of law is applicable, we will accept the Board's conclusion that the union was guilty of unfair labor practices under sections 8(b)(1)(A), 8(b)(2), and 8(b)(3) of the NLRA, in prosecuting the district court action after February 7, 1989.

We realize that even though after February 7, 1989, the union should have recognized that it could not hope to have the arbitration award enforced, the finding that it committed unfair labor practices appears somewhat strained. To start with, it seems that Rite Aid never objected to the arbitration proceeding, at least in the sense of seeking an injunction against the arbitration. There is thus no reason to believe that the arbitration was initiated in bad faith and, of course, the Board did not hold it was. In addition, the Board did not hold that the mere filing of the district court action was an unfair labor practice. Furthermore, while it is true that the union, in prosecuting its district court action after the regional director's decision and order, sought to apply its collective bargaining agreement to employees already determined to be outside the distribution center unit, it could have only achieved this goal with court approval.

We also observe that it is difficult to understand how the mere prosecution of the district court action can be said to have coerced the employees, since they were not parties to the action and, indeed, might not even have been aware of it.[2] Furthermore, it could be argued that prosecution of the action to enforce the arbitration award could not have been an attempt to cause Rite Aid to discriminate against the warehouse employees, since the action could not have caused Rite Aid to do anything unless the union was successful in it, in which event the union would have been vindicated. Nevertheless, we think that since the Board's view can in a technical sense be justified and, in recognition of the fact that it has inferential support in judicial precedent, we should defer to it. *See International Longshoremen's Union v. NLRB,* 884 F.2d 1407, 1413–14 (D.C.Cir.1989).

Our conclusion that, absent some overarching principle of law, we should uphold the Board's finding of unfair labor practices, takes us to the second significant source of law we consider in reaching our outcome, namely, the Supreme Court's opinion in *Bill Johnson's,* which holds that in some circumstances the First Amendment shields parties bringing lawsuits arising from labor disputes from unfair labor

---

**2.** The Supreme Court has indicated that "coerce" as used in section 8(b)(4)(ii) of the NLRA is a "nonspecific, indeed vague" word and thus should be interpreted cautiously without a "broad sweep." *DeBartolo Corp. v. Florida Gulf Coast Trades Council,* 485 U.S. 568, 578,

108 S.Ct. 1392, 1399, 99 L.Ed.2d 645 (1988); *see also Limbach Co. v. Sheet Metal Workers International Ass'n,* 949 F.2d 1241, 1256 (3d Cir.1991) (in banc). On a plenary basis, without giving deference to the Board, we might conclude that "coerce" was broadly applied here.

practices charges. As explained by the Supreme Court, *Bill Johnson's* was concerned with "whether the National Labor Relations Board may issue a cease-and-desist order to halt the prosecution of a state-court civil suit brought by an employer to retaliate against employees for exercising federally-protected labor rights, without also finding that the suit lacks a reasonable basis in fact or law." 461 U.S. at 733, 103 S.Ct. at 2165.

In *Bill Johnson's* after a discharged waitress filed an unfair labor practice charge, she and certain other persons picketed the employer's restaurant. The employer then filed an action in state court seeking an injunction against the picketing and damages for libel. Though the state court originally issued a temporary restraining order, within two months of the filing of the action, it dissolved the order and denied preliminary injunctive relief.

The discharged employee responded to the employer's state court suit by filing a second unfair labor practices charge, which included an allegation that the employer filed the civil suit against the defendants in retaliation for their protected, concerted activities and because of the initial unfair labor charges. A complaint was issued and, following a hearing, an administrative law judge held that the employer by prosecuting the suit committed an unfair labor practice. The judge's conclusion was based on a finding that the employer did not have a reasonable basis for the suit and thus filed it to penalize the discharged employee for having filed charges, and to penalize the other defendants for assisting her. With minor exceptions, the Board adopted the judge's findings of fact and conclusions of law and thus ordered the employer to take remedial measures. The court of appeals enforced the order of the Board.

The Supreme Court vacated and remanded. The Court indicated that at "first blush" the Board's position seemed to have substance because a "lawsuit no doubt may be used by an employer as a powerful instrument of coercion or retaliation," for "by suing an employee who filed charges with the Board or engages in other protect-ed activities, an employer can place its employees on notice that anyone who engages in such conduct is subjecting himself to the possibility of a burdensome lawsuit." *Id.* at 740, 103 S.Ct. at 2168.

But the Court recognized that there was an even more significant consideration: "the right of access to the courts [which] is an aspect of the First Amendment right to petition the Government for redress of grievances." *Id.* at 741, 103 S.Ct. at 2169. Ultimately the Court concluded "that the Board's interpretation of the [NLRA was] untenable" and that the "filing and prosecution of a well-founded lawsuit may not be enjoined as an unfair labor practice, even if it would not have been commenced but for the plaintiff's desire to retaliate against the defendant for exercising rights protected by the [NLRA]." *Id.* at 743, 103 S.Ct. at 2170. However, the Court also concluded that it would reach a different result if the suit was based on an insubstantial claim, *i.e.*, one that did not have a reasonable basis. The Court indicated that a suit could not be viewed as not having a reasonable basis if there was a dispute over a genuine issue of material fact or, even if the facts were not disputed, there was a realistic chance that the plaintiff's legal theory might be adopted by the state court. In that event, the Board was obliged to allow the lawsuit to proceed. Ultimately, however, if the plaintiff did not prevail in the lawsuit, the Board might conclude that the suit had been filed in retaliation for the employees' exercise of section 7 rights and the Board could therefore assess after-the-fact relief of attorney's fees and other expenses against the plaintiff. The Court's reluctance to allow a prior restraint coupled with its recognition that later relief might be appropriate is a natural borrowing of principles regarding restrictions on freedom of speech.

■ The basic holding of *Bill Johnson's* was subject to a large exception, for the Court indicated that it was not dealing with a suit beyond a state court's jurisdiction because of federal preemption or "a suit that has an object that is illegal under federal law." *Id.* at 737 n. 5, 103 S.Ct. at

2167 n. 5. The Board in this case understood the Court to mean that an "illegal objective" was something other than a retaliatory motive and we agree. Where there is an illegal objective, the Board may restrain the lawsuit if it is otherwise meritorious.

The difference between a lawsuit brought because of the plaintiff's retaliatory motivation and a lawsuit with an illegal object under federal law is subtle, for it may be possible for a retaliatory suit to have an illegal objective. For example, in *Bill Johnson's* the Court recognized that a lawsuit may be "a powerful instrument of coercion" as it can warn an employee "who files charges with the Board or engages in other protected activities" that he or she may be subject to a burdensome lawsuit. It would seem that such a retaliatory lawsuit would be brought to discourage employees from asserting their section 7 rights, an illegal objective.[3]

We believe that the distinction lies in the plaintiff's objective goals in bringing the action. Thus, in *Bill Johnson's* the plaintiff sought to prohibit the defendants from harassing its customers and blocking ingress and egress to the restaurant. Furthermore, the complaint included a libel count. On the surface, as the suit did not seek objectives which were illegal under federal law, it had legitimate goals and, depending upon the proofs at trial, could have been won by the plaintiff. *Bill Johnson's*, 461 U.S. at 741–42, 103 S.Ct. at 2169. Thus, in *Bill Johnson's*, the Court indicated that the suit could be restrained as an unfair labor practice only if the plaintiff had an improper motivation, a subjective criterion.

In this case the suit to enforce the arbitration award was prosecuted to circumvent the primary jurisdiction of the Board in deciding representational issues. Accordingly, regardless of the union's motivation, after February 7, 1989, the suit was being pursued for an illegal objective and the union, unlike the plaintiff in *Bill Johnson's*, simply could not obtain the relief it sought regardless of the evidence it produced. In short the union, even if it satisfied the undemanding criteria for enforcement of an arbitration order, was, unlike the plaintiff in *Bill Johnson's*, pursuing an action it could not win. *See International Longshoremen's Union v. NLRB*, 884 F.2d at 1414. Therefore, in pursuing the district court action after the regional director issued his decision and order, the union was unreasonable and its conduct was not protected under *Bill Johnson's*.[4] The union's situation was thus much the same as that of a litigant which subjects itself to sanctions under Fed.R.Civ.P. 11 because of its objectively unreasonable position. Its subjective good faith will not save it. *See Business Guides, Inc. v. Chromatic Communications Enterprises, Inc.*, —— U.S. ——, ——, 111 S.Ct. 922, 932, 112 L.Ed.2d 1140 (1991).

■ The union seeks to avoid enforcement of the decision and order by pointing out that under the Labor Management Relations Act, 29 U.S.C. § 185(a), it had a duty of fair representation of its members. *See Air Line Pilots Ass'n v. O'Neill*, —— U.S. ——, 111 S.Ct. 1127, 113 L.Ed.2d 51 (1991); *Vaca v. Sipes*, 386 U.S. 171, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967). The union contends that as the arbitration award would have benefited its members, it was obliged to seek its enforcement. Whatever force this argument might have in another

---

**3.** *See also Kenrich Petrochemicals, Inc. v. NLRB*, 907 F.2d 400 (3d Cir.) (in banc) (a retaliatory discharge of an otherwise unprotected supervisor may be unlawful since the discharge may discourage other employees from asserting their section 7 rights under the NLRA), *cert. denied*, —— U.S. ——, 111 S.Ct. 509, 112 L.Ed.2d 522 (1990).

**4.** We also point out that while the Board's decision and order by its terms ordered the union to cease and desist from maintaining its action to enforce the arbitration award, in reality it had no such consequence, as the appellate proceedings following the district court action were completed before the Board issued its decision and order. Thus, inasmuch as the Board's decision and order could not be viewed as a prior restraint, even if the Board could not under *Bill Johnson's* grant cease-and-desist relief, which it could, it was not barred from reviewing the matter with hindsight and ordering after-the-fact relief.

context, it is frivolous here for, as we have indicated, the law is well-established that the arbitrator's award could not survive the Board's decision. The duty of fair representation does not require a union to pursue an action which is barred by clear law.

*Eichleay Corp. v. Iron Workers,* 944 F.2d 1047, cited by the union, likewise does not justify its prosecution of the district court action. In *Eichleay* we enforced an award of an arbitrator on a contractual issue, but denied enforcement of an arbitration award which was contrary to a Board unit clarification ruling, *i.e.,* a representational issue. Indeed we took pains to draw the distinction between contractual and representational issues. Thus, *Eichleay* is consistent with the law we have already cited, that the regional director's decision and order were paramount here.[5]

### III.

### CONCLUSION

In view of the foregoing, we will deny the petition for review and will grant the cross-application for enforcement of the decision and order of December 11, 1989.

---

**5.** The union also challenges the Board's remedial order, but its argument on this point is clearly without merit and requires no discussion, as the Board did not abuse its discretion in fashioning a remedy. *See Kenrich Petrochemicals, Inc. v. NLRB,* 907 F.2d 400, 405 (3d Cir.), *cert. denied,* —— U.S. ——, 111 S.Ct. 509, 112 L.Ed.2d 522 (1990).