**THE CIT GROUP/EQUIPMENT FINANCING, INC.,**
Plaintiff,

v.

**James OTTERBACHER dba Otterbacher Enterprises,**
Defendant.

**No. C2–00–878.**

United States District Court, S.D. Ohio, Eastern Division.

Jan. 16, 2002.

---

Erica L. Calderas, Hahn, Loeser & Parks, Cleveland, OH, James E. Morgan,

---

Wildman, Harrold, Allen & Dixon, Chicago, IL, Stephen Eric Chappelear, Sidney Williams, Hahn, Loeser & Parks, Columbus, OH, for plaintiff.

James Otterbacher, Gibsonton, FL, pro se.

## MEMORANDUM & ORDER

HOLSCHUH, District Judge.

Plaintiff filed suit against James Otterbacher after Otterbacher defaulted on his obligations under several conditional sales agreements whereby he had agreed to purchase certain carnival equipment. The Court's jurisdiction is based on diversity of citizenship. This matter is currently before the Court on Plaintiff's motion for summary judgment. (Record at 20).

## I. Background

Between April of 1996 and July of 1998, James Otterbacher entered into four conditional sale contracts and security agreements with Otterbacher Manufacturing. In those four agreements, Otterbacher agreed to buy a total of six pieces of carnival equipment. The equipment consisted of an office trailer, a line trailer, a skee ball trailer, a fry trailer, and two ticket boxes. Otterbacher made down payments on each contract and agreed to make monthly payments to Otterbacher Manufacturing or its assignee. In order to secure each obligation, he granted to Otterbacher Manufacturing a security interest in the equipment itself, together with all present and future attachments, accessories, replacements, and all proceeds thereof. Otterbacher Manufacturing immediately assigned each agreement to the plaintiff in this action, CIT Group. CIT Group then perfected its interest in each piece of equipment. (Compl.¶¶ 6–32).

The security agreements at issue provide that Otterbacher must make monthly payments to CIT Group. A failure to do so constitutes a default. Upon default, CIT Group is entitled to accelerate all payments due; on all late payments, it is entitled to interest at the rate of one and one-half percent per month. In addition to accelerating all payments due, CIT Group may pursue all rights and remedies available under the Uniform Commercial Code, including the right to repossess the collateral, and recover any reasonable expenses incurred in doing so, including attorney fees. (Security Agr. ¶¶ 4, 11–12).

Mr. Otterbacher failed to make his monthly payments as required. On October 7, 1999, CIT Group demanded payment for the amount past due plus late fees.[1] (Ex. E to Compl.). When he failed to respond, on November 1, 1999, CIT Group notified Otterbacher that it was accelerating the amounts due under each of the four contracts. (Ex. F to Compl.). When Otterbacher again failed to respond, CIT Group sent another demand letter on July 18, 2000, giving him ten days to pay the outstanding balances. (Ex G to Compl.). On August 4, 2000, CIT Group filed suit for replevin and breach of contract. It sought an order of possession of the collateral and judgment in the amount of $164,107.50 plus interest, attorney fees and other costs.

Mr. Otterbacher failed to timely file an answer or other responsive pleading. However, on September 27, 2000, he sent a letter to the Court. In that letter, he represented that the equipment at issue was in "perfect condition and available for inspection at any time." He claimed that he had offered to pay CIT Group in full for the equipment but they had insisted on

1. As of that date, the outstanding balances were as follows:

| | |
|---|---|
| Account No. 83366 | $ 2,955.81 |
| Account No. 83367 | $13,133.77 |
| Account No. 28455 | $ 5,570.60 |
| Account No. 73485 | $12,414.96 |

repossessing it and selling it. He requested that the Court hold a hearing in mid-November concerning the disputed claim. The hearing was set for November 15, 2000, but Otterbacher failed to appear. The Court subsequently learned that the Clerk's office had received a letter from Mr. Otterbacher on November 14, 2000, indicating that he would not be at the hearing because he was residing in Florida, had commitments there, and was not represented by an attorney. In that letter, he further claimed that two of the trailers in question had already been returned to CIT Group.

On December 27, 2000, Magistrate Judge Kemp issued a Report & Recommendation, finding that since Otterbacher's letter did not constitute an appropriate response to the motion for an order of possession, the motion should be granted. Although Otterbacher was advised of his right to file objections to the Report & Recommendation, he failed to do so. Consequently, on April 17, 2001, the Court adopted the Report & Recommendation and granted Plaintiff's motion for an order of possession. Once Plaintiff filed a bond in the amount of $262,000, the United States Marshal was ordered to take possession of the six pieces of equipment that were subject to the security agreements. Plaintiff was also instructed to file a motion for summary judgment, which it did on May 2, 2001.

Plaintiff posted the required bond on July 9, 2001. That same day, the United States Marshal seized one of the ticket boxes and turned it over to the custody of CIT Group. On July 10, 2001, Mr. Otterbacher surrendered the other ticket box and the line trailer to CIT Group. On July 12, 2001, Otterbacher surrendered the office trailer to CIT Group. (Record at 22). The United States Marshal indicated that Otterbacher told him that he:

previously returned one 1998 Otterbacher Skee Ball Trailer ... and one Fry Trailer ... to CIT Group/Equipment Financing, Inc. through his brother Gary Otterbacher. James Otterbacher is unable to produce any receipt or written documentation to support his claim. CIT Group/Equipment Financing, Inc. disputes this claim by James Otterbacher.

Marshal's Return at 1–2.

Although four of the six pieces of equipment were surrendered, the location of the remaining two items, the skee ball trailer and the fry trailer, is unknown. After the Marshal's Return was filed, Plaintiff filed a motion to show cause why Defendant should not be held in contempt of the Court's April 17, 2001 Order granting CIT Group possession of the skee ball trailer and fry trailer. Plaintiff claims that it investigated Otterbacher's allegation but had no record that those two pieces of equipment were ever returned.

After the four pieces of equipment were returned, at the Court's request Plaintiff filed a supplement to its motion for summary judgment. It claimed that as of November 5, 2001, Defendant owed $178,063.88 plus interest, attorney fees in the amount of $20,569.00, and other costs. It is Plaintiff's contention that the fact that four of the six pieces of equipment have been returned changes nothing in terms of the motion for summary judgment. Although Plaintiff has not yet sold those four pieces of equipment, when it does, the proceeds will be applied to any judgment rendered in its favor.

The Court held a hearing on the motion to show cause on December 13, 2001; however, Defendant once again failed to appear. Prior to the hearing, Plaintiff filed an affidavit of Phillip Leeper, a portfolio specialist with CIT Group. As of December 13, 2001, Mr. Leeper averred that

Otterbacher owed $177,733.93 plus interest under the terms of the agreements,[2] $22,274.18 in attorney fees, and $3,936.53 for other expenses associated with repossessing the equipment. Thereafter, on December 18, 2001, the Court denied without prejudice Plaintiff's request for an order finding Defendant in contempt. It gave Mr. Otterbacher until January 15, 2002 to respond to Plaintiff's motion for summary judgment as supplemented by Mr. Leeper's December 13, 2001 affidavit.

Mr. Otterbacher failed to respond with a memorandum in opposition. However, on December 26, 2001, the Court received a letter from Mr. Otterbacher, dated December 19, 2001.[3] In that letter, Mr. Otterbacher again claims that he has "no idea of the whereabouts of the 2 pieces of equipment (skeeball and french fry trailer)." He further claims that his last knowledge of the equipment "came from the CIT person involved in picking up the items. He told me he knew the whereabouts of the skeeball & french fry trailers and that he was going to pick them up." Otterbacher states that he has no reason to hold the remaining pieces of equipment because it has already been replaced with new equipment.

## II. Standard for Granting Summary Judgment

Federal Rule of Civil Procedure 56(c) provides:

> [Summary judgment] ... shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

"[T]his standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (emphasis in original); *Kendall v. Hoover Co.*, 751 F.2d 171, 174 (6th Cir.1984).

Summary judgment will not lie if the dispute about a material fact is genuine; "that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505. The purpose of the procedure is not to resolve factual issues, but to determine if there are genuine issues of fact to be tried. *Lashlee v. Sumner*, 570 F.2d 107, 111 (6th Cir.1978). Therefore, summary judgment will be granted "only where the moving party is entitled to judgment as a matter of law, where it is quite clear what the truth is ... [and where] no genuine issue remains for trial, ... [for] the purpose of the rule is not to cut litigants off from their right of trial by jury if they really have issues to try." *Poller v. Columbia Broadcasting Sys.*, 368 U.S. 464, 467, 82 S.Ct. 486, 7 L.Ed.2d 458 (1962) (quoting *Sartor v. Arkansas Natural Gas Corp.*, 321 U.S. 620, 627, 64 S.Ct. 724, 88 L.Ed. 967 (1944)); *accord County of Oakland v. City of Berkley*, 742 F.2d 289, 297 (6th Cir.1984).

In making this inquiry, the standard to be applied by the Court mirrors the standard for what was formerly referred to as a directed verdict. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91

---

**2.** This total is broken down as follows:

| | |
|---|---|
| Account No. 83366 | $45,472.13 |
| Account No. 83367 | $57,869.16 |
| Account No. 73485 | $48,766.11 |
| Account No. 28455 | $25,626.53 |

**3.** The Court thereafter forwarded a copy of the letter to Plaintiff's counsel since Defendant had failed to serve a copy as required.

L.Ed.2d 265 (1986); *Anderson*, 477 U.S. at 250, 106 S.Ct. 2505.

> The primary difference between the two motions is procedural; "summary judgment motions are usually made before trial and decided on documentary evidence, while directed verdict motions are made at trial and decided on the evidence that has been admitted." *Bill Johnson's Restaurants, Inc. v. NLRB*, 461 U.S. 731, 745, n. 11[, 103 S.Ct. 2161, 76 L.Ed.2d 277] (1983). In essence, though, the inquiry under each is the same: whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.

*Anderson*, 477 U.S. at 251–52, 106 S.Ct. 2505. Accordingly, although summary judgment should be cautiously invoked, it is an integral part of the Federal Rules, which are designed "to secure the just, speedy and inexpensive determination of every action." *Celotex*, 477 U.S. at 327, 106 S.Ct. 2548 (quoting Fed.R.Civ.P. 1).

In a motion for summary judgment the moving party bears the "burden of showing the absence of a genuine issue as to any material fact, and for these purposes, the [evidence submitted] must be viewed in the light most favorable to the opposing party." *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970) (footnote omitted); *accord Adams v. Union Carbide Corp.*, 737 F.2d 1453, 1455–56 (6th Cir.), *cert. denied*, 469 U.S. 1062, 105 S.Ct. 545, 83 L.Ed.2d 432 (1984). Inferences to be drawn from the underlying facts contained in such materials must also be considered in the light most favorable to the party opposing the motion. *United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962); *Watkins v. Northwestern Ohio Tractor Pullers Ass'n*, 630 F.2d 1155, 1158 (6th Cir.1980). Additionally, "unexplained gaps" in materials submitted by the moving party, if pertinent to material issues of fact, justify denial of a motion for summary judgment. *Adickes*, 398 U.S. at 157–60, 90 S.Ct. 1598.

If the moving party meets its burden and adequate time for discovery has been provided, summary judgment is appropriate if the opposing party fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial. *Celotex*, 477 U.S. at 322, 106 S.Ct. 2548. The existence of a mere scintilla of evidence in support of the opposing party's position is insufficient; there must be evidence on which the jury could reasonably find for the opposing party. *Anderson*, 477 U.S. at 252, 106 S.Ct. 2505.

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

Fed.R.Civ.P. 56(e).

## III. Discussion

In its motion for summary judgment, Plaintiff represented that, as of April 30, 2001, Otterbacher owed CIT Group $177,733.93 plus interest at the rate of one and one-half percent per month, plus attorney fees and costs in the amount of $17,969.57. In support of its motion, Plaintiff submitted the affidavit of William E. Oberlander, a portfolio specialist with CIT Group, setting forth the history of the company's dealings with Mr. Otterbacher, and stating the amount currently owed

pursuant to the terms of the agreements. As noted earlier, CIT Group has more recently submitted the affidavit of Phillip Leeper, another portfolio specialist with CIT Group. As of December 13, 2001, Mr. Leeper averred that Otterbacher owed $177,733.93 plus interest under the terms of the agreements, $22,274.18 in attorney fees, and $3,936.53 for other expenses associated with repossessing the equipment.

Significantly, Mr. Otterbacher has not denied that, pursuant to the terms of the security agreements, CIT Group is entitled to a judgment in its favor. Furthermore, he has not disputed any of the amounts to which CIT Group claims to be entitled as set forth in Mr. Leeper's affidavit.[4] After carefully reviewing the terms of the relevant security agreements and the affidavits of Mr. Oberlander and Mr. Leeper, the Court finds that Plaintiff is entitled to summary judgment in this action. Otterbacher does not dispute that he failed to make monthly payments as due and was therefore in default. As such, CIT Group was entitled to repossess the equipment it had secured as collateral, and accelerate payment of all amounts owed under the agreements. Pursuant to the terms of the agreements and Ohio law, CIT Group was also entitled to interest in the amount of one and one-half percent per month, and was entitled to recover attorney fees and all reasonable expenses associated with repossessing the equipment.

Since Mr. Otterbacher has failed to present the Court with any evidence from which a reasonable jury could find otherwise, Plaintiff's motion for summary judgment is granted. The Clerk is directed to enter judgment in favor of CIT Group for $177,733.93 plus interest at the rate of one and one-half percent per month, plus $22,274.18 in attorney fees and $3,936.53 for other expenses CIT Group has incurred in connection with its efforts to repossess the equipment. When CIT Group sells the repossessed equipment in accordance with Ohio Revised Code Chapter 1309, the proceeds of the sale shall be applied to this judgment.

There is, of course, still the outstanding factual dispute of the whereabouts of the two remaining pieces of equipment.[5] CIT Group has submitted the affidavit of Mr. Leeper who claims that, although CIT Group has diligently searched its records, it has found no evidence indicating that Otterbacher returned these two trailers. (Leeper Aff. ¶ 27). Although Mr. Otterbacher may claim that he has, in fact, returned these two remaining pieces of equipment, he has not submitted any affidavits or other admissible evidence to support his claim.

The Court notes that the April 17, 2001 Order of Possession concerning the two missing trailers is still in effect and CIT Group is legally entitled to possession of the equipment. In the event CIT Group discovers the whereabouts of the two missing trailers, it is directed to sell or lease those trailers, along with the four other pieces of carnival equipment, and apply the proceeds to the judgment. In the meantime, the burden is on Mr. Otterbacher to show that he returned the skee ball trailer and the fry trailer to CIT Group's possession. If the missing trailers are not found, CIT Group obviously cannot sell them, and cannot apply the sale proceeds to reduce the amount of the judgment. In that case,

---

4. It appears from Otterbacher's December 19, 2001 letter that the only issue in dispute is who has current possession of the skeeball trailer and fry trailer.

5. Even though this issue is in dispute, it does not affect the Court's decision to grant CIT Group's motion for summary judgment. While the dispute may affect the execution of the judgment, it had no impact on the appropriateness of the judgment itself.

Mr. Otterbacher would remain liable for the entire amount still owed to CIT Group for those trailers.

## IV. Conclusion

Based on Defendant's complete failure to present any evidence that creates a genuine issue of material fact concerning whether he is liable for breach of contract, Plaintiff's motion for summary judgment (Record at 20) is **GRANTED.** The Clerk is directed to enter judgment for Plaintiff CIT Group, and against Defendant James Otterbacher, as follows:

$177,733.93 plus interest at the rate of one and one-half percent per month;

$22,274.18 in attorney fees; and

$3,936.53 for other costs and expenses.

**IT IS SO ORDERED.**