Justice Scalia,
concurring in the judgment in part and dissenting in part.
I disagree with two aspects of the Court’s reasoning. First, the Court is incorrect to state that our “precedents *402 confirm that the Petition Clause protects the right of individuals to appeal to courts and other forums established by the government for resolution of legal disputes.” Ante, at 387. Our first opinion clearly saying that lawsuits are “Petitions” under the Petition Clause came less than 40 years ago. In California Motor Transport Co. v. Trucking Unlimited, 404 U. S. 508 (1972),[1] an opinion by Justice Douglas, the Court asserted that “[t]he right of access to the courts is indeed but one aspect of the right of petition.” Id., at 510. As authority it cited two habeas corpus cases, Johnson v. Avery, 393 U. S. 483 (1969), and Ex parte Hull, 312 U. S. 546 (1941), neither of which even mentioned the Petition Clause. The assertion, moreover, was pure dictum. The holding of California Motor Transport was that the Noerr-Pennington doctrine, a judicial gloss on the Sherman Act that had been held to immunize certain lobbying (legislature-petitioning) activity, did not apply to sham litigation that “sought to bar . . . competitors from meaningful access to adjudicatory tribunals,” 404 U. S., at 510-512. The three other cases cited by the Court as holding that lawsuits are petitions, ante, at 387, are all statutory interpretation decisions construing the National Labor Relations Act, albeit against the backdrop of the Petition Clause. See BE&K Constr. Co. v. NLRB, 536 U. S. 516, 534-536 (2002); Sure-Tan, Inc. v. NLRB, 467 U. S. 883, 896-897 (1984); Bill Johnson’s Restaurants, Inc. v. NLRB, 461 U. S. 731, 741-743 (1983). The Court has never actually held that a lawsuit is a constitutionally protected “Petition,” nor does today’s opinion hold that. The Court merely observes that “[t]he parties litigated the case on the premise that Guarnieri’s grievances and lawsuit *403 are petitions protected by the Petition Clause,” ante, at 387, and concludes that Guarnieri’s 42 U. S. C. § 1983 claim would fail even if that premise were correct.
.1 find the proposition that a lawsuit is a constitutionally protected “Petition” quite doubtful. The First Amendment’s Petition Clause states that “Congress shall make no law .. . abridging . . . the right of the people ... to petition the Government for a redress of grievances.” The reference to “the right of the people” indicates that the Petition Clause was intended to codify a pre-existing individual right, which means that we must look to historical practice to determine its scope. See District of Columbia v. Heller, 554 U. S. 570, 579, 592 (2008).
There is abundant historical evidence that “Petitions” were directed to the executive and legislative branches of government, not to the courts. In 1765, the Stamp Act Congress stated “[t]hat it is the right of the British subjects in these colonies to petition the King or either House of Parliament.” Declaration of Rights and Grievances, Art. 13, reprinted in 1 B. Schwartz, The Bill of Rights: A Documentary History 195, 198 (1971); it made no mention of petitions directed to the courts. As of 1781, seven state constitutions protected citizens’ right to apply or petition for redress of grievances; all seven referred only to legislative petitions. See Andrews, A Right of Access to Court Under the Petition Clause of the First Amendment: Defining the Right, 60 Ohio St. L. J. 557, 604-605, n. 159 (1999). The Judiciary Act of 1789 did not grant federal trial courts jurisdiction to hear lawsuits arising under federal law; there is no indication anyone ever thought that this restriction infringed on the right of citizens to petition the Federal Government for redress of grievances. The fact that the Court never affirmed a First Amendment right to litigate until its unsupported dictum in 1972 — after having heard almost 200 years’ worth of lawsuits, untold numbers of which might have been affected by a First Amendment right to litigate — should give rise to a *404 strong suspicion that no sueh right exists. “[A] universal and long-established tradition of prohibiting certain conduct creates a strong presumption that the prohibition is constitutional: Principles of liberty fundamental enough to have been embodied within constitutional guarantees are not readily erased from the Nation’s consciousness.” Nevada Comm’n on Ethics v. Carrigan, ante, at 122 (internal quotation marks omitted).
I acknowledge, however, that scholars have made detailed historical arguments to the contrary. See, e. g., Andrews, supra, at 595-625; Pfander, Sovereign Immunity and the Right To Petition: Toward a First Amendment Right To Pursue Judicial Claims Against the Government, 91 Nw. U. L. Rev. 899, 903-962 (1997). As the Court’s opinion observes, the parties have not litigated the issue, and so I agree we should leave its resolution to another day.
Second, and of greater practical consequence, I disagree with the Court’s decision to apply the “public concern” framework of Connick v. Myers, 461 U. S. 138 (1983), to retaliation claims brought under the Petition Clause. The Court correctly holds that the Speech Clause and Petition Clause are not coextensive, ante, at 388-389. It acknowledges, moreover, that the PetiLion Clause protects personal grievances addressed to the government, ante, at 394. But that is an understatement — rather like acknowledging that the Speech Clause protects verbal expression. “[T]he primary responsibility of colonial assemblies was the settlement of private disputes raised by petitions.” Higginson, A Short History of the Right To Petition Government for the Redress of Grievances, 96 Yale L. J. 142, 145 (1986). “[T]he overwhelming majority of First Congress petitions presented private claims.” 8 Documentary History of the First Federal Congress of the United States, 1789-1791, p. xviii (K. Bowling, W. diGiacomantonio, & C. Bickford eds. 1998). The Court nonetheless holds that, at least in public employment cases, the Petition Clause and Speech Clause should be *405 treated identically, so that since the Speech Clause does not prohibit retaliation against public employees for speaking on matters of private concern, neither does the Petition Clause. The Court gives two reasons for this: First, “[a] different rule for each First Amendment claim would . . . add to the complexity and expense of compliance with the Constitution” and “would provide a ready means for public employees to circumvent the test's protections,” and second, “[p]etitions to the government assume an added dimension when they seek to advance political, social, or other ideas of interest to the community as a whole.” Ante, at 393, 395.
Neither reason is persuasive. As to the former: The complexity of treating the Petition Clause and Speech Clause separately is attributable to the inconsiderate disregard for judicial convenience displayed by those who ratified a First Amendment that included both provisions as separate constitutional rights. A plaintiff does not engage in pernicious “circumvention” of our Speech Clause precedents when he brings a claim premised on a separate enumerated right to which those precedents are inapplicable.
As to the latter: Perhaps petitions on matters of public concern do in some sense involve an “added dimension,” but that “added dimension” does not obliterate what has traditionally been the principal dimension of the Petition Clause. The public-concern limitation makes sense in the context of the Speech Clause, because it is speech on matters of public concern that lies “within the core of First Amendment protection.” Engquist v. Oregon Dept. of Agriculture, 553 U. S. 591, 600 (2008). The Speech Clause “has its fullest and most urgent application to speech uttered during a campaign for political office.” Citizens United v. Federal Election Comm’n, 558 U. S. 310, 339 (2010) (internal quotation marks omitted). The unique protection granted to political speech is grounded in the history of the Speech Clause, which “was fashioned to assure unfettered interchange of ideas for the bringing about of political and social changes desired by the *406 people.” Connick, supra, at 145 (internal quotation marks omitted).
But the mere fact that we have a longstanding tradition of granting heightened protection to speech of public concern does not suggest that a “public concern” requirement should be written into other constitutional provisions. We would not say that religious proselytizing is entitled to more protection under the Free Exercise Clause than private religious worship because public proclamations are “core free exercise activity.” Nor would we say that the due process right to a neutral adjudicator is heightened in the context of litigation of national importance because such litigation is somehow at the “core of the due process guarantee.” Likewise, given that petitions to redress private grievances were such a high proportion of petitions at the founding — a, proportion that is infinitely higher if lawsuits are considered to be petitions — it is ahistorical to say that petitions on matters of public concern constitute “core petitioning activity.” In the Court’s view, if Guarnieri had submitted a letter to one of the borough of Duryea’s council members protesting a tax assessment that he claimed was mistaken; and if the borough had fired him in retaliation for that petition; Guarnieri would have no claim for a Petition Clause violation. That has to be wrong. It takes no account of, and thus frustrates, the principal purpose of the Petition Clause.
The Court responds that “[t]he proper scope and application of the Petition Clause . .. cannot be determined merely by tallying up petitions to the colonial legislatures,” ante, at 394, but that misses the point. The text of the Petition Clause does not distinguish petitions of public concern from petitions of private concern. Accordingly, there should be no doctrinal distinction between them unless the history or tradition of the Petition Clause justifies it. The mere fact that the Court can enumerate several historical petitions of public importance, ante, at 395-397, does not establish such a tradition, given that petitions for redress of private griev- *407 anees vastly outnumbered them. Indeed, the Court’s holding is contrary to this Court’s historical treatment of the Petition Clause, assuming (as the Court believes) that the Clause embraces litigation: We have decided innumerable cases establishing constitutional fights with respect to litigation, and until today not a one of them has so much as hinted that litigation of public concern enjoys more of those rights than litigation of private concern. The Court’s belief in the social importance of public petitions, and its reminiscences of some of the public-petition greats of yesteryear, ibid., do not justify the proclamation of special constitutional rights for public petitions. It is the Constitution that establishes constitutional rights, not the Justices’ notions of what is important, or the top numbers on their Petition Hit Parade. And there is no basis for believing that the Petition Clause gives special protection to public petitions.
Rather than shoehorning the “public concern” doctrine into a Clause where it does not fit, we should hold that the Petition Clause protects public employees against retaliation for filing petitions unless those petitions are addressed to the government in its capacity as the petitioners’ employer, rather than its capacity as their sovereign. As the Court states, we have long held that “government has significantly greater leeway in its dealings with citizen employees than it does when it brings its sovereign power to bear on citizens at large.” Ante, at 392 (quoting Engquist, supra, at 599; internal quotation marks omitted). To apply to the Petition Clause context what we have said regarding the Speech Clause: When an employee files a petition with the government in its capacity as his employer, he is not acting “as [a] citize[n] for First Amendment purposes,” because “there is no relevant analogue to [petitions] by citizens who are not government employees.” Garcetti v. Ceballos, 547 U. S. 410, 421, 423-424 (2006). To be sure, the line between a petition addressed to government as the petitioner’s employer and one addressed to it as sovereign is not always clear, but it is *408 no more fuzzy than the line between matters of private and matters of public concern.[2] The criterion I suggest would largely resolve the legitimate practical concerns identified by the Court, ante, at 390-393, while recognizing and giving effect to the difference between the Speech and Petition Clauses.
Under what I think to be the proper test, the Third Circuit judgment before us here should be reversed in part and affirmed in part. The portion of it upholding Guarnieri’s claim of retaliation for having filed his union grievance must be reversed. A union grievance is the epitome of a petition addressed to the government in its capacity as the petitioner’s employer. No analogous petitions to the government could have been filed by private citizens, who are not even permitted to avail themselves of Guarnieri’s union grievance procedure. Contrariwise, the portion of the judgment upholding Guarnieri’s claim of retaliation for having filed his § 1983 claim must be affirmed. Given that Guarnieri was not an employee of the Federal Government, it is impossible to say that the § 1983 claim was addressed to government in its capacity as his employer. I think it clear that retaliating against a state employee for writing a letter to his Congress *409 man about his state job would run afoul of the Petition Clause. Assuming that the § 1983 lawsuit should be treated like a letter to a Congressman for Petition Clause purposes— a, ^proposition which, I again emphasize, is doubtful, but which the parties do not disputé in this case — retaliation for having filed his lawsuit also violates the Clause.

 Respondent would agree, since he cited this case in argument as the earliest. Tr. of Oral Arg. 36. There were, however, three cases in the 1960’s which advortod vaguely to lawsuits as involving the right to petition. See Mine Workers v. Illinois Bar Assn., 389 U. S. 217, 222-224 (1967); Trainmen v. Virginia ex rel. Virginia State Bar, 377 U. S. 1, 7 (1964); NAACP v. Button, 371 U. S. 415, 430 (1963).

 Compare, e. g., Alpha Energy Savers, Inc. v. Hansen, 381 F. 3d 917, 927 (CA9 2004) (testimony concerning claim of employment discrimination by government contractor constituted matter of publie concern because “[litigation seeking to expose . . . wrongful governmental activity is, by its very nature, a matter of public concern”), with Padilla v. South Harrison R-II School Dist., 181F. 3d 992, 997 (CA8 1999) (teacher’s testimony approving sexual relationship between teacher and minor wao matter of private concorn bocauoc it “does not relate to the teacher’o legitimate disagreement with a school board’s policies”). And compare, e. g., Voigt v. Saveli, 70 F. 3d 1552, 1560 (CA9 1995) (speech regarding how judge handled two internal personnel matters was matter of publie eoneern because “[t]hc publie hao an interest in knowing whether the court treats its job applicants fairly”), with Maggio v. Sipple, 211 F. 3d 1346, 1353 (CA11 2000) (testimony at hearing concerning employee grievance wao matter of private concern because it did “not allege ., ¡ fraud or corruption in [defendant’s] implementation of ito personnel policies and appeal procedures”).